751 So.2d 326 (1999)
STATE of Louisiana
v.
Gregory DAVIS.
No. 98-KA-1019.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1999.
Rehearing Denied March 16, 2000.
*327 Harry F. Connick, District Attorney, Orleans Parish, Shana Broussard, Assistant District Attorney, Holli Herrle-Castillo, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff/Appellant.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG and Judge MICHAEL E. KIRBY.
ARMSTRONG, Judge.

STATEMENT OF CASE:
The defendant, Gregory Davis, was charged August 14, 1997, with simple burglary. He was arraigned August 18, 1997, and pled not guilty. On October 10, 1997, the trial court found no probable cause for simple burglary, but found probable cause for unauthorized entry of an inhabited dwelling. La. R.S. 14:62.3. On October 27, 1997, the court found the defendant guilty as charged. On October 31, 1997, he was sentenced to three years at hard labor. The State filed a multiple bill. On November 26, 1997, the trial court found the *328 defendant to be a second offender. The State then filed another multiple bill which the trial court quashed. The court then vacated the original sentence, and resentenced the defendant to six years at hard labor. The State filed a motion for appeal.

FACTS:
Murray Soraporu, Jr., 4613 Majestic Oaks, testified that on July 13, 1997, he saw the defendant walking down the street with a pair of his speakers that he had been storing at 1201 Feliciana. Soraporu told defendant to put the speakers in Soraporu's car, and that if he found him around the house again, he would call the police. Soraporu went to the house and found that the back door had been kicked in. He patched the door and put another board over it. He passed the house later in the day, and discovered that the board had been removed. His father advised him to make a police report. At the police station, he was advised to go to the house and wait for an officer to arrive. While there, he saw the defendant go into the house. Soraporu called his father on his cellular telephone, and his father called the police. The officers arrived and found the defendant in the house. The defendant then took them to a house on Marais Street where Soraporu found some of his belongings that had been in his yard and shed.
On cross-examination, Soraporu explained that the house on Feliciana is owned by his father for rental property. No one resided in the house because he was working on it. Soraporu stated that a neighbor saw the defendant kicking the door in, and then later saw him walking down the street with items from the house. He stated that building materials, paint, plywood, "table stuff", and tennis rackets were taken, and that the value of the items was between $2,000.00 and $3,000.00. He explained that there was no furniture in the house, and that here was no bathroom floor because he had had to remove it while remodeling.
Murray Soraporu, Sr., said that he owned the house and had not given the defendant permission to enter.
Officer James Adams said that he answered the call of someone breaking into the house. He arrived to find officers already on the scene. He spoke to Soraporu, Jr., who told him that someone had broken into the house. He found the back door broken into. One officer stayed outside the residence, and Adams and another entered. At first, the officers found no one inside, but on closer inspection they found the defendant hiding under the bathroom floor.

STATE'S ASSIGNMENT OF ERROR:
At the multiple bill hearing, the State attempted to establish that the defendant was a third offender. The prosecutor produced a fingerprint expert who testified that he had fingerprinted the defendant that morning, and that the fingerprints matched those on the arrest registers of the two prior offenses. The defense argued that in one of the prior convictions there was no necessity for the defendant to have been Boykinized because he had been found guilty after a trial. However, in the other, the defendant pled guilty, and there was no evidence that the defendant had been properly Boykinized. As such, the defense argued that the State had proven that the defendant was a second offender, but had not proven that the defendant was a third offender. The court then found the defendant to be a second offender.
The State immediately filed a second multiple bill, conceding that it was filing the multiple bill because it had failed to carry its burden under the first one. The court immediately quashed the multiple bill.
On appeal, the State argues that the filing of the second bill of information did not violate double jeopardy. The defense concedes that the filing was not violative of double jeopardy, but argues that because the trial court did not base its decision to *329 prohibit the State from filing a second bill of information on grounds of double jeopardy, the State has not properly briefed the assignment and it should be deemed abandoned.
After quashing the second multiple bill, the trial court stated:
I don't think that the law is that the State can proceed with a hearing on a motion, fail, and then just file another one. I can't imagine that being the spirit and the letter of the law; fairness, equity, you know.
Defense counsel don't (sic) get an opportunity to lose a trial and then say, "Well, okay, Judge. Come on. Give me another one." And then give me another one.
You had your Multiple Bill hearing today, you failed to give your burden of proof, you proved that he was a double and not a triple. Now you want to file another one....
Well, I don't think it goes like that. Trial - multiple trial isn't until the State gets it right. Let me find that one in the code. You had your hearing, you fail, take it up.
By these reasons, it is clear that the trial court was finding that the filing of the second multiple bill was violative of double jeopardy because to allow it to so file would be to give the State a second chance to prove what it had been unable to prove. The issue of double jeopardy was properly raised by the State, was properly briefed, and has not been abandoned.
The defense concedes that the filing of the second multiple bill was not violative of double jeopardy, and in so conceding is correct. The Louisiana Supreme Court stated in State v. Denis, 96-2706, p. 1 (La.4/25/97), 692 So.2d 1055: "[P]rinciples of res judicata or double jeopardy do not preclude the State in a single prosecution from adjudicating the defendant a third offender and then adjudicating him a fourth offender in a subsequent proceeding on the basis of a conviction and documentary evidence not used previously to determine his multiple status."
This assignment has merit, and the quashing of the multiple bill should be reversed.

DEFENDANT'S ASSIGNMENT OF ERROR:
At the preliminary hearing October 10, 1997, Adams explained how he answered the call, arrived at the house, spoke to Soraporu, Jr., found the back door pried open, and found the defendant hiding under the removed bathroom floor boards at which time he arrested the defendant and advised him of his rights. On cross-examination, the defense began to question the officer as to whether the house was inhabited. The State objected to relevance on the ground that the crime charged was simple burglary, and not burglary of an inhabited dwelling. The trial court sustained the objection. The Court then found probable cause for an unauthorized entry. The minute entry of the day states that the "Court found no probable cause for the simple burglary and found probable cause for the unauthorized entry," even though there was no mention at the hearing of no probable cause for simple burglary.
Then, prior to trial, the defense began arguing that "probable cause had been found for criminal trespass, which is a misdemeanor, which is not a responsive verdict at all to simple battery.... Simple burglary." The defense asked if the State was trying him on simple burglary even though the trial court had not found probable cause for simple burglary. The Prosecutor said, "That is correct. We have other witnesses who I think can fill in the details that were perhaps lacking in the preliminary hearing."
Then, during opening statement, the prosecutor began by stating, "Judge, State will prove that on July 13th of this year, that the defendant entered the house on 1201 Feliciana Street. He was seen removing items from that house and caught *330 by the victims in this case. Later on, the victims decided not to pursue that matter at that time. Later on in that evening, the victim". The defense then moved for a mistrial on the basis that the State could not mention prior arrests or convictions, "especially, arrests or uncharged behavior of the defendant." The defense argued that the state could not mention events that happened earlier in the day the defendant was arrested. The State explained that the actions of the defendant earlier in the day established the simple burglary. The court denied the motion for mistrial.
On appeal, the defense argues that "the state ambushed Mr. Davis at trial by presenting the essential and critical allegations of its case for the first time after the trial commenced, leaving Mr. Davis with no possibility of preparing a meaningful defense." The basis of the argument is that the defendant went to trial believing that the State "was going to attempt to prove its case through the allegations made in the police report and at the preliminary hearing relative to Mr. Davis's presence in Mr. Soraporu's house at the time of the arrest." The defendant makes arguments that the trial court erred, the prosecutor erred, and that defense counsel was ineffective.
The defendant was clearly charged by bill of information with simple burglary. He was arraigned on that charge and pled not guilty. Thus, he was absolutely aware of the charge he was defending.
As to the events surrounding the preliminary hearing, the purpose of the preliminary hearing is to determine whether there is probable cause to hold the defendant over for trial. The State is under absolutely no obligation to present all of its evidence at the preliminary hearing, only enough evidence to show that there was probable cause for the defendant's arrest. In this case, admittedly, there was an error in the minute entry to the extent that it stated: "Court found no probable cause for the simple burglary and found probable cause for the unauthorized entry." In reality, the court simply found that there was probable cause at least for an unauthorized entry, and therefore probable cause for the defendant's arrest. Even though there was an error in the minute entry, the court's holding was announced in open court in front of all parties. Nothing suggested that the charge had been amended to something less than simple burglary.
Most importantly, the defendant was in fact aware of the evidence of his activity around the house prior to his having been found in the house. At the preliminary hearing, the defense elicited the following on cross-examination:
Q: Officer, given that nobody lived there you said that the rear door was forced open, can you explain to me how you can tell that it was forced open?
A: Well, they had boarded the rear door up on several occasions and from what I was informed of by the victim the perpetrator had been to the residence and broke into the residence before on other occasions. And they had told him to stay away from the residence. And this particular night they called again because they had broke into the residence again, because they had never called the police. So the rear door was boarded up, they had boards all across the rear door to keep people out so what he did, obviously, was took the board off the rear door to enter.
Q: So is it your testimony that the victims, either the son or the father, told you that someone had broken into this building before, but did they tell you that Mr. Davis had broken into
A: They told me that Mr. Davis had broken into, because they had caught him on previous occasions, but other than calling the police they had thought that, from the victim's statement, that he was on some type of drugs and they had told him to simply to stay away *331 from the residence and they didn't press charges on the earlier occasions.
As such, the defense elicited the very information that it now claims the State used to blindside it. The defendant in fact knew that the State's case involved his earlier entrances into the house.
The defendant claims that counsel was ineffective for failing to conduct further discovery. Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir. 1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La. 1983); State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
First, the defendant does not show that counsel's performance was deficient. Counsel was aware that the defendant had broken into the house before; it is not clear how further discovery would have helped the case. Second, even if counsel's performance had been deficient, there is no suggestion that the defendant was prejudiced. The evidence against the defendant was overwhelming. He was seen by the owner of the property taken from the house, Soraporu, Jr., carrying the property. Soraporu, Jr., confronted him, and the defendant returned the property. Later in the day, Soraporu, Jr., again saw the defendant going into the house, where he was in fact found hiding by the police. He showed the police items he had taken from the house that he was storing at another residence. There is nothing to suggest that if counsel had proceeded differently, the outcome of the case would have been different.
This assignment is without merit.
For the foregoing reasons, the defendant's conviction is affirmed but the sentence is vacated. The trial court's ruling *332 granting the motion to quash the multiple bill is reversed and the case is remanded for disposition of the second multiple bill.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.