762 So.2d 82 (2000)
STATE of Louisiana
v.
Walter PRATER.
No. 99-KA-0900.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 2000.
*84 Harry F. Connick, District Attorney, Cate L. Bartholomew, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Menette W. Burns, Louisiana Appellate Project, Covington, LA, Counsel for Defendant/Appellant.
(Court composed of Judge MIRIAM G. WALTZER, Judge MOON LANDRIEU, and Judge DENNIS R. BAGNERIS, Sr.)
BAGNERIS, Judge.

STATEMENT OF CASE
On October 1, 1998, a bill of information was filed charging the defendant with violating La. R.S. 40:967 relative to possession of crack cocaine. The defendant was arraigned on October 7, 1998 and pled not guilty. Following a motion hearing on October 19, 1998, the court found probable cause for the defendant's arrest and denied the defendant's motion to suppress the evidence. On November 9, 1998, a six-member jury found the defendant guilty as charged. On December 23, 1998, the defendant was sentenced to serve three years in the custody of the Department of Corrections. The defendant's motion for reconsideration of the sentence was denied. His motion for appeal was granted. That same day the State filed a multiple bill charging the defendant with being a second felony offender. The defendant admitted his identity, and the State submitted copies of a bill of information, a plea of guilty form, and a minute entry to prove that the defendant had previously pled guilty to the charge of possession of cocaine *85 in Jefferson Parish. The trial court found the defendant to be a second felony offender, vacated the original sentence, and sentenced the defendant under La. R.S. 15:529.1 to serve three years in the Department of Corrections, with credit for time served. The court ordered that the newly imposed sentence run concurrent to any other sentence the defendant is presently serving. The appeal record was filed in this court on April 13, 1999. The defendant's brief was filed on July 13, 1999, and the State's brief was filed on August 2, 1999.

STATEMENT OF FACT
Officer Keith Joseph testified that on September 25, 1998, he received a call around 1:30 a.m. from the dispatcher advising of a possible suspect with a weapon selling cocaine in the area near the 1400 block of Eliza. The suspect was described as a heavy-set male wearing a white T-shirt and jean pants.
En route to the location given by the dispatcher the officer saw the defendant and four or five young men standing near a vehicle in the parking lot of an apartment complex located in the 400 block of Leboeuf Street. The defendant was standing in front of the vehicle towards the left passenger fender, and the other men were sitting on the vehicle on the driver's side. Because the defendant was the only person in the area who fit the description given by the dispatcher, Officer Joseph decided to detain him for questioning. As Officer Joseph pulled up and exited his vehicle, the other men ran, but the defendant did not flee. Officer Joseph observed the defendant discard a clear plastic container from his right hand. Officer Joseph retrieved the container and found that it contained twenty-one rocks of crack cocaine. Officer Joseph arrested the defendant, patted him down and recovered seventy-four dollars from his left front pocket.
The parties stipulated that Officer Harry O'Neal, a drug analyst in the Crime Lab of the New Orleans Police Department, was an expert in the field of forensic chemistry and specifically with the testing and identification of cocaine. Officer O'Neal testified that he tested four of the rocks found in the discarded container and all four tested positive for cocaine. Based on the tests performed on the four randomly selected rocks and the similar appearances of the rocks, he concluded that all twenty-one rocks were positive for cocaine.
The defendant testified that he lived at 325 Leboeuf Street in Algiers. The defendant testified that he pled guilty to possession of cocaine during the summer of 1998 in Jefferson Parish, and he had previously been convicted of assault. Later, on cross-examination, he admitted that when he pled guilty to possession of cocaine in Jefferson Parish, he also pled guilty to possession of hydrocodone.
The defendant denied being in possession of the twenty-one rocks of cocaine contained in the canister. He insisted that if he had possessed the canister, he would have run as the other young men had done.
The defendant testified that earlier that night he had been at 1422 Eliza Street playing cards at a friend's house. He left his friend's house around 1:20 a.m. and headed for home. He was traveling on foot and took a shortcut through the back of the apartments. As he walked through the lot, he saw this guy named Marcel run inside the apartments. Marcel was heavy set and was wearing a white T-shirt and blue jeans; he fit the description given by the dispatcher of the person selling drugs in the area. The defendant later learned from neighbors that Marcel was the person who was actually selling cocaine in the neighborhood that night, and Marcel was the person being referred to by the neighbor who called the police that night.
The defendant, cognizant of the fact that +he was on probation, tried to leave the area, but the police pulled up quickly and turned the lights on before the defendant *86 could leave the area. The defendant stopped when he saw the police officer's lights. The defendant insisted that he did not have any drugs on his person, and he did not throw anything down.
The defendant testified that Officer Joseph exited his vehicle and called all four or five young men to the car. After searching the defendant, Officer Joseph took the defendant's cellular phone and beeper and then told the defendant that he must have been out there selling drugs. The defendant further testified that the seventy-four dollars, which the Officer found in his pocket, belonged to him. Although the defendant denied selling drugs, Officer Joseph handcuffed the defendant and called his name in on his radio. Afterwards, the officer told the defendant's girl-friend not to worry because the defendant was not wanted. Yet, the officer kept the defendant handcuffed in the back seat of his car and drove to a nearby Spur gas station. They remained at the gas station for fifteen to twenty minutes. While at the station, Officer Joseph spoke to officers in two other police cars that were on the side of his car. Officer Joseph asked one of the other officers whether he thought Officer Joseph should book the defendant or let him go. Officer Joseph commented that he had done better than Martinez that day.
The defendant admitted that there were people outside in the area of his arrest that night who could come to court and testify and corroborate his story; however, he stated that these people were afraid to testify.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error the defendant argues that the trial court committed reversible error by denying his requests for a mistrial.
The defendant complains of four specific incidents that occurred during the course of the trial. The first instance complained of by the defendant occurred during the opening statement when the prosecutor stated:
Officer Keith Joseph is going to take the stand. He's going to tell you that he was respond (sic)  he and other officers were responding to a call regarding a large, large black male wearing a white T-shirt and jeans that was out in the area selling drugs with a gun.
Defense counsel objected to the remark and moved for a mistrial. The court denied the motion, and counsel noted his objection.
The second incident occurred after the opening arguments. The prosecutor immediately called Officer Keith Joseph to the stand and elicited testimony to the effect that on the night in question he was in the area of 400 Lebouef Street pursuant to a call from the dispatcher reporting a possible subject with a weapon selling cocaine in the area.
The defendant argues that by eliciting these remarks, the prosecutor was trying to show the defendant was guilty of more than he was charged with, i.e., he was trying to show the defendant had a gun and was selling cocaine. He argues that the problems presented by the opening statement and the earlier testimony given by Officer Joseph was aggravated by a third incident that occurred later in Officer Joseph's testimony. More specifically he complains about an exchange wherein the prosecutor asked Officer Joseph what was recovered when he conducted a pat down search of the defendant. The officer responded by stating that seventy-four dollars was recovered from the defendant's left front pocket. When the State sought to have the officer identify the currency recovered from the defendant, the defendant objected stating that the money was not contraband, and that the $74 had no *87 relevancy to the case for possession of cocaine. The trial judge overruled the objection stating that the prosecutor had a right to display what actually occurred at the time of arrest.
The defendant argues that by eliciting this irrelevant and prejudicial testimony, it is clear that the prosecutor was merely trying to show that he was a bad person. Finally, the defendant argues that the remarks made by the prosecutor in closing argument bolstered his argument that the prosecutor was trying to show that he was a bad person because he was guilty of other crimes. The defendant complains of the following remarks made in closing argument:
There's got to be a reason why cocaine is illegal. It's addictive. And it's dangerous for you. It's addictive.
There are only two things that the defendant could have been doing with this. Number one, he's a user; or number two, he's a seller. Those are the only two reasons why that man had these drugs on him.
And if he's a user, he's got a really bad habit, and it's not good for his children. And the reason why he possessed it is because it's addictive.
Or number two, he's a seller. And man, this is income. This is income.
The defendant argues that because of the statements made by the prosecutor and by Officer Joseph, the evidence of another crime for which the defendant was not charged was improperly and illegally introduced into evidence. The defendant argues that introduction of such evidence constitutes reversible error because it was prejudicial, and the State did not provide prior notice to the court or the defendant in contravention of La. C.E. art. 404 which provides in relevant part as follows:
Art. 404. Character evidence generally not admissible in civil or criminal trial to prove conduct; exceptions; other criminal acts
* * * *
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes,... provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.(emphasis supplied)
When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant, as to which evidence is not admissible, the defendant's remedy is a request for an admonition or a mistrial pursuant to LSA-C.Cr.P. art. 771. The remark or comment must constitute an unambiguous reference to other crimes. State v. Lewis, 95-0769, p. 7 (La.App. 4 Cir. 1/10/97), 687 So.2d 1056, 1060, writ denied, 97-0328 (La.6/30/97), 696 So.2d 1004. On request, the trial court shall admonish the jury to disregard such remark or comment. La.C.Cr.P. art. 771. Upon motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial. Id. The granting of a mistrial under La.C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Smith, 418 So.2d 515, 522 (La.1982); State v. Allen, 94-1895, p. 9 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1085, writs denied, 95-2557, 95-2475, (La.2/2/96), 666 So.2d 1087. Mistrial is a drastic remedy that is only authorized where substantial prejudice will otherwise result to the defendant. Id. The determination of whether prejudice has resulted *88 lies within the sound discretion of the trial court. State v. Banks, 96-2227, p. 2 (La.4/18/97), 692 So.2d 1051, 1053. A trial court's ruling on whether or not to grant a mistrial because of comment by a police officer referring to other crimes evidence should not be disturbed absent a clear abuse of discretion. State v. Nicholson, 96-2110, p. 13 (La.App. 4 Cir. 11/26/97), 703 So.2d 173, 180, writ denied, 98-0014 (La.5/1/98), ___ So.2d ___, 1998 WL 234690; State v. Manuel, 94-0087, 94-0088, p. 4 (La.App. 4 Cir. 11/30/94), 646 So.2d 489, 491. "Errors are harmless unless the reviewing court is thoroughly convinced that the remarks inflamed the jury and contributed to the verdict." State v. Nicholson, supra, citing State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, Byrne v. Louisiana, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986)
The defendant's argument that the court committed reversible error when it overruled his objections and allowed damaging testimony and arguments of other crimes does not have merit.
In the case at bar, the officer's statement that he was responding to a call indicating that an individual with a gun was selling cocaine in the area is not an unambiguous statement accusing the defendant of these crimes. The statement merely provides a reason for the officer being in the vicinity at the time. Further, although the trial court denied the motion for mistrial during opening statement, the court clearly instructed the jury as to the reason for this testimony. Immediately after Officer Joseph gave a description of the suspect, the court interrupted the State's case and made the following statement:
Let me interrupt for one second. There was an objection during the opening statement by the D.A. about the information this officer had received. Ladies and gentlemen, I overruled that objection. You have the right to hear information as to what the officer heard. In other words, information that was relayed to him. (sic) So that you can know what it was that he acted upon, what information he acted upon. However, the information that he's telling you he received over the radio you're not to consider as being true. You're not to consider that information for the truth of the matter which is being asserted to him, but you're simply asked to consider that information for what action did he take based upon what he heard. Proceed.
The defendant argues that these latter remarks by the trial judge were not sufficient to cure the problem of the reference to other crimes. However, the trial court made it clear to the jury that the officer's statement was not to be taken for the truth of the matter being asserted, but that the information was to be considered in terms of why the officer took the action he took. More importantly, assuming arguendo that any of the jurors thought the prosecutor was insinuating that the defendant was the individual who had a weapon or was selling cocaine, those insinuations were certainly dispelled by the additional emphasis placed on Officer Joseph's testimony during cross examination.
On cross-examination defense counsel thoroughly questioned the officer about the report of a weapon as demonstrated by the following exchange.
BY MR. LILLIAN [defense counsel]:
Q. Now, the description of the person that you received  first of all, you said the call, when it came in to you, mentioned that this person might have a weapon; is that correct?
A. Yes, sir.
Q. I see that in the police report. You did prepare a police report; is that correct?
A. Yes, sir.
Q. Okay. The defendant, did he have a weapon on him when he was arrested?
A. No, sir.

*89 Q. Okay. Did you find a weapon anywhere in his area, immediate area, under his control?
Q. No, sir.
Clearly, evidence of the report from the dispatcher was admitted solely to show the reason for Officer Joseph being in the vicinity. Accordingly, the complaint concerning this evidence has no merit.
The emphasis on the currency found in the defendant's pocket is more troubling as it is difficult to comprehend what relevancy the money found on the defendant would have in a simple possession of cocaine prosecution. When considered in conjunction with the remarks in closing argument concerning the defendant being either a user or a seller of cocaine, the potential for the jury to conclude the prosecutor was implying the defendant was also selling cocaine cannot be ignored. However, the jury was clearly aware of the fact that the defendant had only been charged with possession of cocaine. Further, no evidence was introduced to link the currency in the defendant's pocket to the sale of cocaine. Thus, it is highly unlikely that the jury thought the money was linked to the sale of drugs.
Finally, the remarks made in closing argument concerning the defendant either having the cocaine because he was a user or seller appear to have been made directly in response to arguments made by the defendant as demonstrated by the fact that the prosecutor prefaced those remarks with the following statement:
Mr. Lillian [defense counsel] asks, Why (sic) would he throw this all away. Why would Mr. Prater throw all this away knowing he's on probation? Actually, also he's got two children. Why would he throw it all away? There's got to be a reason why cocaine is illegal....
The statement in closing argument as to the two possible reasons for having the cocaine on his person were in direct response to the argument made by the defendant that no reasons existed for him to throw the container of cocaine away or have it on his person. As such the statements do not appear to be improper.
Even if the remarks in opening statement, the testimony, and closing argument could be construed as referring to evidence of other crimes, there is no indication that the remarks made it impossible for defendant to have obtained a fair trial. Considering the overwhelming evidence in this straightforward case, such error was harmless. Accordingly, it cannot be said that the trial court clearly abused its discretion in denying defendant's motion for a mistrial. There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, the defendant argues the trial court committed reversible error by sentencing defendant as a second felony offender despite insufficient evidence.
The defendant failed to file a written response to the multiple bill of information complaining of any irregularities pursuant to La.R.S. 15:529.1 D(1)(b). However, he orally objected to "the substantial nature of the documents inasmuch as there is no indication of a colloquy with the judge except a form document." His oral objection is sufficient to preserve the issue of sufficiency for appellate review. See State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14 and State v. Lorio, 94-2591 (La.App. 4 Cir. 9/28/95), 662 So.2d 128.
On the date that the defendant was sentenced the State filed a bill of information alleging that the defendant was a multiple offender. The multiple bill alleged that the defendant was found guilty of possession of cocaine on October 9, 1998 and that he was previously charged in case # 98-2529-S in 24th JDC with violating La. R.S. 40:967 A2 relative to distribution of cocaine. The bill further alleged that on August 28, 1998, the defendant pled guilty *90 in the 24th JDC proceedings to violating La. R.S. 40:967 C2, i.e., possession of cocaine.
At the sentencing hearing the defendant admitted his identity. However, the defendant objected to the sufficiency of the documentation presented by the State because there was no indication of a colloquy with the judge except for the form document.
With respect to his prior conviction for possession of cocaine in case # 98-2529 in 24th JDC, the State introduced a bill of information, a waiver of rights form, and a minute entry.[1] The original bill of information for case # 98-2529 charging the defendant with distribution of cocaine has a handwritten notation signed by an assistant district attorney indicating that the bill was amended to simple possession of cocaine on 7-16-98. The waiver of rights form is dated July 16, 1998. The waiver form has a space for initials next to each sentence, and the form contains the defendant's initials in each space. The defendant, his defense attorney, and the trial judge signed the waiver of rights form. The signed waiver of rights form contains the sentencing range for possession of cocaine, as well as the exact sentence the judge would be imposing on the defendant. The waiver of rights form also lists all three of the Boykin rights.[2] The minute entry for case # 98-2529 is dated July 16, 1998. The minute entry incorrectly stated that the defendant withdrew his plea of not guilty and tendered a plea of guilty to violating R.S. 40:967 A, F.
As noted by the defendant, several discrepancies are apparent from reviewing the documents. First, the minute entry incorrectly stated the charge to which the defendant pled guilty. Secondly, contrary to the allegation in the multiple bill that the defendant pled guilty to possession of cocaine on August 28, 1998, both the waiver of rights form and the minute entry indicate that the defendant actually pled guilty to possession of cocaine on July 16, 1998. Because of the discrepancies in dates and ambiguity as to what offense the defendant actually pled guilty, the defendant argues that the trial court erred by finding him to be a second felony offender. In the absence of a transcript of the colloquy between the trial court and the defendant, the defendant argues the evidence produced at the multiple offender hearing was not sufficient to establish that he knowingly and voluntarily pled guilty to the predicate offense.
Notwithstanding the technical errors in the minute entry and multiple bill, this assignment of error does not have merit.
The Louisiana Supreme Court set forth the burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769, 779-780 (La.1993):
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [footnote omitted] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of *91 and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin [v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] rights. [footnote omitted]
Pursuant to the mandate of Shelton, the State had the burden of proving the existence of a guilty plea in a prior case and that the defendant was represented by counsel when the plea was taken. In the instant case, both the minute entry dated July 16, 1998 and the waiver of rights form dated July 16, 1998 reflect that the defendant was represented by counsel when his plea to the predicate offense was made. Further, the documents reflect that the trial judge advised the defendant of his rights against compulsory self-incrimination, to a trial by jury or judge, and to confront his accusers and that the defendant waived these rights. "Although a transcript of the colloquy between the trial court and the defendant is the preferred evidence proving that the defendant knowingly waived his rights by pleading guilty, it is not indispensable when the record contains other evidence of a proper waiver of these rights." State v. Moten, 619 So.2d 683 at 686 (La.App. 4 Cir.1993).
Notwithstanding the misstatement on the multiple bill as to the date the defendant pled guilty to possession of cocaine in case # 98-2529, both the minute entry and waiver of rights form clarify that the correct date for the plea was July 16, 1998, not August 28, 1998. As to the ambiguity concerning the charge to which the defendant pled guilty, both the amended bill of information and the waiver of rights form clearly state that the offense to which the defendant pled was possession of cocaine. Additionally, at the trial of the case, the defendant candidly admitted that he had pled guilty to possession of cocaine in Jefferson Parish during the summer of 1998. Further, at the sentencing hearing on the multiple bill, the trial judge specifically noted that the multiple bill alleged the defendant had pled guilty to possession of cocaine. Considering all the evidence presented and known to the trial judge, the documents were sufficient to prove the voluntariness and validity of the defendant's prior conviction for possession of cocaine. Despite the inconsequential discrepancies, the documents show the defendant was fully Boykinized when he pled guilty to the predicate offense. Accordingly it does not appear the trial judge erred when it adjudicated the defendant to be a second offender.

ASSIGNMENT OF ERROR NUMBER 3
By his third assignment of error the defendant argues the trial court erred by failing to file written findings as to the multiple offender adjudication as required by law.
The defendant argues that the trial court failed to comply with La. R.S.15:529.1 D(3), which provides, in relevant part, that after adjudicating a defendant a multiple offender, "The court shall provide written reasons for its determination."
Although the trial court did not provide a separate written form reciting the reasons for its determination, a review of the record indicates that the trial court judge stated:
The Court does find that Mr. Prater is one and the same person that has a previous felony conviction for the charge of possession of cocaine in Jefferson Parish to which he pled guilty to the 28th day of August 1998. For purposes of this proceeding I find him to be a second felony offender.
*92 Notwithstanding the erroneous date cited for the defendant's conviction, the remarks demonstrate that the court concluded that the State presented sufficient documentation to establish that the defendant had a prior conviction for possession of cocaine, and that this conviction occurred within two months of the commission of the present offense. Given the fact that the defendant admitted to having the prior conviction both at the sentencing hearing and at trial, the reasons for the court's determination that he is in fact a second felony offender were sufficient. Given the reasons orally given by the trial judge, any failure to provide written reasons for the multiple offender adjudication constitutes harmless error.

ASSIGNMENT OF ERROR NUMBER 4
By his final assignment of error the defendant argues the trial court committed error patent by failing to advise the defendant of the three year limitation for post conviction relief under La. C.Cr.P. art. 930.8.
The defendant argues the trial court failed to comply with La. C.Cr.P. art. 930.8(C) which states: "At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." Citing State v. Cox, 604 So.2d 189, 194 (La.App. 2 Cir. 1992) and State v. Corley, 617 So.2d 1292, 1295 (La.App. 3 Cir.1993), reversed on other grounds, 93-1934 (La.3/11/94), 633 So.2d 151, cert denied, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282, 63 USLW 3285 (1994), the defendant suggests that this failure to advise him of the prescriptive period for post conviction relief is an error patent. He argues the case must be remanded for the trial court to give written notice of the prescriptive period. However, relying upon State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, 1201, this court routinely holds that the language in La. C.Cr.P. article 930.8(C) is supplicatory language and does not bestow an enforceable right upon an individual defendant.
Accordingly, failure to comply with La. C.Cr.P. article 930.8(C) is not an error patent and requires no action on the part of the appellate court. See State v. Brooks, 98-1124 (La.App. 4 Cir. 10/20/99), 745 So.2d 129; State v. Guillard, 98-0504 (La.App. 4 Cir. 4/7/99), 736 So.2d 273; State v. Jones, 97-2217, (La.App. 4 Cir. 2/24/99), 731 So.2d 389, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234; State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102.

CONCLUSION
Accordingly, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The State also introduced a bill of information, waiver of rights form, and minute entry for case # 98-2530 wherein the defendant also apparently pled guilty to possession of hydrocodone on July 16, 1998. However, this charge was not listed in the multiple bill of information, and that evidence appears to have no relevancy to the multiple offender charge.
[2] These are the right to trial by jury, the right against self-incrimination, and the right to confront and cross-examine his accusers.