849 So.2d 799 (2003)
STATE of Louisiana
v.
Thomas H. WILLIAMS.
No. 2002-KA-2189.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 2003.
Eddie J. Jordan, Jr., District Attorney, Kristen A. Keller, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
*800 (Court composed of Judge CHARLES R. JONES, Judge MAX N. TOBIAS JR., Judge DAVID S. GORBATY).
CHARLES R. JONES, Judge.
Thomas H. Williams was charged by bill of information with and convicted of simple possession of crack cocaine. On March 5, 2002, the district court sentenced him to serve seventeen months at hard labor. The court also granted Williams' motion for appeal. On that same date, the State filed a multiple bill, alleging that Williams was a second offender. Williams pled not guilty to the multiple bill. The hearing on the multiple bill was continued several times until August 9, 2002. At that hearing, after the State introduced documentation to support the multiple bill, the parties realized that the documentation did not match the prior conviction alleged in the multiple bill. Rather, it was documentation from the present case. The district court continued the matter, and on November 6, 2002, the district court held a second hearing. At the conclusion thereof, the district court found Williams to be a second offender. The court vacated the original sentence and ordered Williams to serve thirty months at hard labor as a second offender, without benefit of parole, probation, or suspension of sentence. The district court denied Williams' motion to reconsider his sentence. Williams now appeals his conviction and sentence, arguing one error as to his adjudication as a second offender.
At trial, Detective Frank Watts and Officer Todd Durel testified that they were on routine patrol in the early evening of September 24, 2001. As they were driving down N. Dorgenois Street they saw the defendant, Thomas Williams, walking south on St. Ann Street. They each testified that as they stopped at the corner of N. Dorgenois and St. Ann Streets, Williams observed them, dropped an object from his hand, turned, and began walking north on St. Ann Street. The officers testified that they exited their vehicle and while Detective Durel detained Williams, Officer Watts walked over to the area where Williams dropped the object and retrieved the object, which was a plastic bag containing what appeared to be a rock of crack cocaine. The officers further testified that they arrested Williams, and at that point a woman came out of the house on the corner and questioned why they were arresting Williams. Williams identified the woman as his "old lady." Detective Watts testified that there was no debris in the area where he retrieved the cocaine, and he also testified that he did not lose sight of the object Williams dropped. Both officers testified that Williams was the only person in the area of the object when they saw him drop it.
Also at trial, the parties stipulated that the object in the bag retrieved by Detective Watts tested positive for cocaine, and it weighed one tenth of a gram.
At trial, Trina Mahone testified that she is Williams' girlfriend, and that on September 24, 2001, she and Williams lived at 2601 St. Ann Street, located at the corner of St. Ann and N. Dorgenois. She further testified that she, Williams, their young son, another woman, and her brother were just leaving the house to get something to eat when the officers drove up and ordered Williams to come to their vehicle. Ms. Mahone further testified that Williams was carrying five syringes at the time of his arrest, intending to walk to his grandmother's house nearby to give them to her. She also testified that the officers immediately handcuffed Williams and began searching him and the area. She further testified that they found nothing, and then she allowed Officer Durel to search the house. She estimated she and Officer Durel were inside the house for approximately *801 ten minutes. When they emerged from the house, Detective Watts indicated that he "found it," showing them the bag with the rock of cocaine in it.
Williams admitted he had a prior conviction for armed robbery, testifying at trial that he was caught in the robbery, and that he pled guilty to the charge in 1992, when he was sixteen years old. He testified that on the day of his arrest in this case, he and the others were getting ready to leave the house to get something to eat when he got a call. In response to that call, he grabbed a few syringes, intending to walk to his grandmother's house and give them to her. He testified that he saw the officers as he walked out the front door, and they called him over to them. He also testified that he went to them, and they immediately handcuffed him and began searching him. He testified that they questioned him about the syringes, and while he was being detained his grandmother arrived on the scene to corroborate his statement that he had them for her. Williams also testified that the area where the officers stopped him was full of debris, and when the officers found nothing, Officer Durel and Ms. Mahone went into the house. He testified that he estimated they were inside for about seven minutes and then they came back outside. He also testified that when Officer Durel indicated that the house was "clean", Detective Watts told him "I got it," indicating the bag with the rock of crack cocaine. Then Detective Watts told Durel he saw Williams throw down the bag. Williams also testified that the officers arrested him, and that a few weeks after he was released on bail, Detective Watts again arrested him for dropping a bag of cocaine, but those charges were refused as false.
A review of the record reveals one patent error. The district court erred by imposing Williams' sentence without benefit of parole. Neither La. R.S. 40:967C(2), the substantive statute for possession of cocaine, nor La. R.S. 15:529.1A(1)(a), the multiple bill statute, provide for the prohibition of parole for a second offender convicted of simple possession of cocaine. Thus, we amend Williams' sentence to delete the prohibition of parole eligibility.
By his sole assignment of error, Williams argues that he is entitled to a new multiple bill hearing because of errors committed by the State which denied him the opportunity to dispute the voluntariness of his 1992 plea of guilty to armed robbery, which formed the basis of the multiple bill. According to the minute entry of March 5, 2002, the State filed a multiple bill just after sentencing, alleging that Williams was a second offender, and Williams pled not guilty to the multiple bill. The matter was reset a few times, and on August 9, 2002, the State called a fingerprint expert who compared fingerprints taken from Williams to fingerprints found on the back of an arrest register. The expert matched the fingerprints, but then it was discovered that the arrest register was for the present offense, not for the 1992 armed robbery plea of guilty alleged in the multiple bill. The district court then reset the matter, allowing the State time to compile the correct paperwork. Williams objected on the record, noting he had been to court many times in the case already. At the conclusion of the hearing, held November 6, 2002, the State presented the certified copies from Williams' 1992 guilty plea to armed robbery, as well as testimony from Williams' parole officer who positively identified Williams as the man he supervised in the armed robbery case. Williams testified at that hearing that he told the judge in 1992 that he was pleading guilty because his mother told him to do so. Nonetheless, the district court found him to be a *802 second offender, vacated his original sentence, and resentenced him to serve thirty months as a second offender.
Williams now argues that his second offender adjudication and sentence are invalid because he was not given the opportunity to dispute the voluntariness of his prior plea because of the State's failure to show him its documentation prior to the November multiple bill hearing. He argues that at the August hearing the State had the wrong arrest register, and he also argues that the prosecutor at the November hearing "believed" she had given the defense at the earlier hearing the certified copies of the prior conviction, but she was not certain she had done so. He argues that because he indicated at the November hearing that his prior plea was not voluntary because he only pled guilty at the urging of his mother, he is now entitled to a new hearing on the multiple bill.
Williams' claim is without merit. He cites no authority for the proposition that the State must produce its evidence to the defense prior to the actual hearing date.[1] As per La. R.S. 15:529.1(D), the district court must inform the defendant of the allegations in the multiple bill and allow him time to object to the allegations. The statute does not require the State to produce its proof of the multiple bill prior to the hearing. In addition, it is clear that Williams knew the 1992 armed robbery plea was going to be used to enhance his sentence, as that is the case alleged in the multiple bill of information which was filed many months prior to the August hearing. Now he does not argue that the documentation submitted at the hearing was inadequate to meet the State's burden of proof of the multiple bill, see State v. Shelton, 621 So.2d 769 (La.1993), nor that the documentation would show that he was not adequately advised of his rights as per Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Indeed, a review of the minute entry and the waiver of rights form the State presented as to the prior plea indicates that Williams was adequately advised of his Boykin rights.
Instead, Williams argues that his plea was involuntary because he pled guilty not because he wanted to do so, but because his mother forced him to do so. At the multiple bill hearing, he argued that he could prove this claim if he had the colloquy of that plea. However, Williams and his attorney knew from the moment the multiple bill was filed that the State would try to use this plea to enhance his sentence, but apparently no effort was made to obtain this transcript. Because the argument of involuntariness did not hinge upon the sufficiency of the documentation of the plea, it is immaterial whether or not the State provided this documentation prior to the November hearing. Williams was put on notice when the multiple bill was filed that the State intended to use this prior plea to enhance his sentence, and it is clear that at the latest he was aware at the August hearing that this plea would be used. Because he had at least three months in which to obtain his proof of involuntariness, and because his claim was not tied to the State's documentation of the plea, he cannot now argue that any failure to produce this documentation prior to the November hearing denied him the right to prove the 1992 plea was involuntary. As such, we find his argument that he is entitled to a new hearing on the multiple bill is without merit.
*803 Accordingly, we affirm Thomas H. Williams' conviction and his adjudication as a second offender. We amend his sentence to delete the prohibition of parole, and affirm his sentence as amended.
AMENDED, AFFIRMED AS AMENDED.
NOTES
[1] The case Williams cites, State v. Davis, 98-1019 (La.App. 4 Cir. 12/29/99), 751 So.2d 326, does not stand for this proposition.