900 So.2d 156 (2005)
STATE of Louisiana
v.
Matthew SYKES.
Nos. 2004-KA-1199, 2004-K-0947.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 2005.
*158 Eddie J. Jordan, Jr., District Attorney, Claire DeVidas, Assistant District Attorney, New Orleans, LA, for State of Louisiana.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Matthew Sykes.
(Court composed of Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
EDWIN A. LOMBARD, Judge.
Before the court is the defendant's appeal and the State's application for supervisory writ. After review of the record in light of the applicable law and arguments of the parties, we affirm in part and remand in part.

Procedural History
The defendant, Matthew Sykes, was charged on March 17, 2003, with one count each of possession with the intent to distribute heroin in violation of La.Rev.Stat. 40:966, possession with the intent to distribute cocaine in violation of La.Rev.Stat. 40:967, and possession with the intent to distribute marijuana in violation of La.Rev. Stat. 40:966. He was arraigned on October 14, 2003, and pleaded not guilty to all counts. On December 3, 2003, the court heard and denied his motion to suppress the evidence. On January 27, 2004, a twelve-person jury found him guilty as charged with respect to the heroin and cocaine charges and guilty of the responsive verdict of simple possession of marijuana. The State filed a multiple bill on that date. On February 10, 2004, the court sentenced him on the heroin and cocaine counts to serve eight years at hard labor and on the marijuana court to credit for time served, and it ordered all sentences to run concurrently. The court held the multiple bill hearing on April 1, 2004, at the conclusion of which the court found the defendant to be a second offender. The court vacated the previous sentence on the heroin count and resentenced *159 the defendant to serve twenty-five years at hard labor. Pursuant to a motion to reconsider sentence, the court on that same date vacated the twenty-five-year sentence and imposed a thirteen-year sentence on the heroin count as a second offender. The State noted its intent to seek writs, and on June 3 it filed writ 2004-K-0947 in this court. On June 23, a panel of this court ordered this writ consolidated with the present appeal.

Relevant Facts
On February 26, 2003, New Orleans Police Department ("N.O.P.D.") officers received a tip from a paid, reliable, confidential informant ("C.I.") concerning drug sales from a courtyard in the Fischer housing project. The C.I. stated that a slim African-American male wearing a hooded jacket was selling drugs in the 2100 block of LeBouef. Based on this information, Detectives Cesar Ruffin and Bennett Williams set up a surveillance of the area, stationing themselves in a breezeway in the 2000 block of LeBouef Court where they could see the courtyard in the 2100 block. Shortly thereafter, the defendant, fitting the description given by the C.I., walked into the courtyard and engaged in four hand-to-had transactions in a ten to fifteen minute period. In each transaction, the suspected buyer walked up to Sykes and conversed with him, the buyer gave Sykes some currency, and in return Sykes reached into his right pants pocket and retrieved an object, which he then gave to the suspected buyer.
Based on this suspicious behavior, the officers decided to stop Sykes. As the officers approached Sykes, he looked surprised, reached into his pocket, retrieved a brown paper bag, and dropped it to the ground. One of the officers retrieved the bag while the other officer detained Sykes. The bag contained tin foils of heroin, several large pieces of crack cocaine, and two bags of marijuana. The officers arrested Sykes, seized the bag of drugs, and seized $118.00 from his person. In addition, they arrested Sykes for trespassing in the housing project because he did not live there, and they later cited him for misrepresentation when they learned that he had given them a false name at his arrest.

Discussion

Defendant's Assignment of Error No. 1Motion to Suppress
The defendant contends the trial court erred by denying his motion to suppress the evidence and that the drugs he abandoned as a result of the stop must be suppressed because the officers had no reasonable suspicion to stop him. The defendant argues that the officers did not have reasonable suspicion to stop him because the C.I.'s tip was neither detailed nor predictive and the officers did not corroborate the tip. In addition, he argues that the officers' alternative basis for stopping him, that he was trespassing because he did not live in the housing project, was a pretense.
In response, the State argues the officers had at least reasonable suspicion to stop the defendant due to their observation of the suspected drug transactions and, moreover, it is immaterial whether the officers had reasonable suspicion to stop the defendant because he abandoned the bag of drugs prior to an actual or even an actual imminent stop.
The Fourth Amendment of the U.S. Constitution and Article 1, Section 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. In order to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible. If, however, property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental *160 interference, then the property may be lawfully seized and used in the resulting prosecution. State v. Tucker, 626 So.2d 707, 710 (La.1993). "[T]he police do not need probable cause to arrest or reasonable suspicion for an investigatory stop every time they approach a citizen in a public place." State v. Britton, 93-1990, p. 2 (La.1/27/94) 633 So.2d 1208, 1209 (mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention; police have the same right as any citizen to approach an individual in public and to engage him in conversation under circumstances that do not signal official detention).
In this case, the officers' actions did not constitute either an actual or an imminent actual stop[1], and thus the defendant abandoned the bag prior to any unlawful intrusion into his right to be left alone from governmental interference. Therefore, the officers lawfully seized the bag containing the drugs and, once the drugs were found, the officers had probable cause to arrest the defendant, and incident to this arrest they could lawfully search the defendant and seize the money from his pocket. Because there was no actual or imminent actual stop, it is immaterial whether the officers had reasonable suspicion to stop the defendant[2] but, even if the officers' action constituted an imminent actual stop, the informant's tip, corroborated by police surveillance, was sufficient to support an investigatory stop. See Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (an anonymous tip, corroborated by police surveillance, could supply enough reliability to support an investigatory stop); see also State v. Jackson, XXXX-XXXX (La.3/15/02), 824 So.2d 1124 (no actual imminent stop when officers, acting on a tip, went to a residence, exited their car, stood at the fence to the residence and observed the defendant, who fit the description given in the tip, walk quickly up on the porch and abandon drugs); State v. Lewis, XXXX-XXXX (La.4/26/02), 815 So.2d 818, cert. den. Lewis v. Louisiana, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002) (no actual imminent stop when the officers approached the defendant and his companion, identified themselves, and blocked the suspects' way); State v. Jackson, XXXX-XXXX (La.App. 4 Cir. 2/13/02), 812 So.2d 139 (no actual imminent stop where the officers merely approached a group of men *161 which included the defendant, and the defendant walked away and threw something over a fence); see also State v. Dobard, 2001-2629 (La.6/21/02), 824 So.2d 1127 (the officers' subjective intent to stop anyone in a bar was irrelevant because the defendant abandoned drugs upon seeing the officers enter the bar and identify themselves). Accordingly, the trial court properly denied the motion to suppress. This assignment of error is without merit.

Defendant's Assignment of Error No. 2
The defendant argues there was insufficient evidence to support his convictions for possession of heroin and cocaine with the intent to distribute. He concedes that the State presented evidence to support a jury's finding that he possessed the heroin and cocaine, but he maintains that the State failed to prove beyond a reasonable doubt that he possessed these drugs with the intent to distribute them. Specifically, he alleges the State failed to present expert evidence to show that the amount of heroin and cocaine was too great to be for his personal use.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, 523 So.2d 1305; Green, 588 So.2d 757. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.Rev.Stat. 15:438. This is not a separate test from Jackson, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
The defendant was charged with and convicted of one count each of possession of heroin with the intent to distribute and possession of cocaine with the intent to distribute. La. R.S. 40:966 A, 40:967 A. In order to support a conviction for these counts, the State had to prove that the defendant possessed the cocaine and the heroin and that he had the intent to distribute them. See State v. Williams, 594 So.2d 476, 478 (La.App. 4 Cir.1992); *162 State v. Howard, 2000-2700 (La.App. 4 Cir. 1/23/02), 805 So.2d 1247. Intent is a condition of mind that is usually proved by evidence of circumstances from which intent may be inferred. State v. Fuller, 414 So.2d 306 (La.1982); State v. Phillips, 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. Specific intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute. State v. Dickerson, 538 So.2d 1063 (La.App. 4 Cir. 1989).
In this case, both officers testified they observed the defendant engage in at least three hand-to-hand transactions with various people who met with him in the courtyard. The defendant does not mention the transactions in his sufficiency argument, but the jury heard the officers' testimony on this point, The jury apparently found the officers' testimony to be more credible than that of the defendant, who insisted that he was in the courtyard only to buy cocaine and that he possessed only the bags of marijuana. We do not find that the jury abused its discretion in this credibility determination. Viewing the evidence in the light favorable to the State, there was sufficient evidence to support the jury's verdict of guilty of possessing both the heroin and the cocaine with the intent to distribute them. This assignment is without merit.

Defendant's Assignment of Error No. 3
The defendant contends that trial court erred by adjudicating him a second offender. Specifically, he argues that his due process rights were violated because he was never formally arraigned on the multiple bill, the State did not provide statutory notice and documentation in support of the allegations in the multiple bill, and the court failed to give written reasons for its decision to adjudicate him a multiple offender. He acknowledges that there was no issue as to whether he was convicted of the crime listed in the multiple bill.
The transcript of the multiple bill hearing indicates the defendant did not raise any of these grounds at the hearing. He argues that these claims were included in the motion to quash the multiple bill, but a reading of the motion does not show these claims were specifically raised. The motion, filed on the date of the multiple bill hearing, listed three grounds for quashing the bill: (1) the State failed to prove he had been previously convicted (a fact he now concedes); (2) the State failed to prove he "was properly Boykinized in case no. ____."; and (3) the State failed to comply with the provisions of La.Rev.Stat. 15:529.1. Even if his present claims were preserved under the last generic ground, they have no merit.
The defendant argues that his due process rights were violated because he was never formally arraigned on the multiple bill, nor did the State present any documentation prior to the multiple bill hearing to prove the allegations in the bill. However, the record shows the defendant was put on notice of the bill prior to the hearing, both at the end of trial when the State filed the bill on January 27, 2004, after which an off-the-record discussion occurred, and again at the original sentencing held on February 10, 2004, when the State indicated it was not ready to go forward on the bill because it had not yet received the proper paperwork pertaining to the prior conviction. The multiple bill hearing was held on April 1, over three months after the bill was filed.
Contrary to the defendant's argument, he had ample time to prepare for the multiple bill hearing. Moreover, there is no requirement in La.Rev.Stat. 15:529.1 that the State produce documentation to prove the allegations in the bill prior to the hearing on the bill. State v. Williams, *163 2002-2189, pp. 5-6 (La.App. 4 Cir. 6/4/03), 849 So.2d 799, 802. In this case, the defendant does not argue that the documents do not show that he was adequately advised of his Boykin rights prior to pleading guilty to the multiple bill; rather, he merely alleges that his due process rights were violated because the State did not produce its documentation prior to the hearing. This claim has no merit.
His remaining claim, that his rights were violated because the trial court did not issue written reasons for finding him to be a multiple offender, is also without merit. Although La.Rev.Stat. 15:529.1 D(3) provides that the trial court shall issue written reasons for its determination that a defendant is a multiple offender, this court in State v. Prater, 99-0900 (La.App. 4 Cir. 4/26/00), 762 So.2d 82, found that the failure to issue written reasons is harmless where the trial court's oral reasons demonstrated that it concluded that the State presented sufficient documentation to establish the defendant's prior conviction. Here, at the conclusion of the multiple bill hearing the trial court noted that it had reviewed the waiver of rights form and determined that the defendant had placed his initials next to all the "essential" rights listed on the form. The defendant does not now argue that this finding was wrong. Accordingly, the defendant's claims concerning his multiple bill adjudication are without merit.

Claim Raised in the State's Writ Application
In its application in writ 2004-K-0947, the State contends the trial court erred by vacating the original sentence as a multiple offender on the defendant's heroin count and imposing a sentence which falls below the statutory minimum for a defendant convicted of possession of heroin with the intent to distribute as a second offender. After finding the defendant to be a second offender on that count, the court initially sentenced the defendant to serve twenty-five years at hard labor, the minimum sentence he could receive. See La.Rev.Stat. 40:966 A; 15:529.1. The defendant filed a motion to reconsider sentence. The court noted that the defendant's prior conviction was for simple possession of cocaine, and it further noted that the defendant was nineteen years old at the time of sentencing. The court called a bench conference, at the conclusion of which the court found the minimum sentence of twenty-five years was excessive as to this defendant as per State v. Dorthey, 623 So.2d 1276 (La.1993), and the court vacated that sentence and imposed a sentence of thirteen years at hard labor. The State noted its objection, and the court granted the State time to seek relief. The State filed a timely writ in this court, which the court consolidated for review with this appeal.
The State now argues that the trial court abused its discretion by vacating the mandatory minimum sentence and imposing a sentence below the statutory minimum. The trial court has the authority to reduce a mandatory minimum sentence provided by the multiple offender statute for a particular offense and offender if the sentence would be constitutionally excessive. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370. Because the Habitual Offender Law has been held constitutional, the minimum sentences it imposes upon multiple offenders are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. To rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is exceptional in that, because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are *164 meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531.
In his response to the State's claim, the defendant lists mitigating factors which he claims support the court's imposition of a sentence below the mandatory minimum, and he compares his sentence to those other cases. However, there is no indication that the defendant presented any of these arguments to the trial court and therefore this court cannot consider these arguments in determining whether the trial court erred by imposing a sentence below the statutory minimum. Based on the record, we cannot determine whether the trial court erred imposing a sentence below the statutory minimum and, accordingly, remand the matter to the trial court.

Conclusion
Because the defendant's claims on appeal have no merit, the defendant's convictions, his sentences on his cocaine and marijuana convictions, and his adjudication as a second offender as to the heroin count are affirmed. Because we cannot determine whether the trial court erred by imposing a sentence below the mandatory minimum on the defendant's heroin conviction, the matter is remanded to the trial court for a determination on that issue.
AFFIRMED IN PART; REMANDED IN PART.
NOTES
[1] An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. State v. Tucker, 626 So.2d 707 (La.1993). An "imminent actual stop" occurs when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Id.
[2] The defendant's argument that the officers did not have reasonable suspicion to stop him also is flawed. He cites various cases to support his contention that the tip itself was insufficient to support the stop, but in those cases where relief was granted the officers did not corroborate the tip with a surveillance wherein they observed suspected drug transactions. In addition, the defendant cites to various inconsistencies between the gist, the police report, and the testimony of the officers at the suppression hearing and at trial to show their testimony as to the corroboration is suspect. However, the trial court was aware of these inconsistencies and chose to believe the officers, a credibility determination this court must not disturb unless it is strictly contrary to the evidence. See State v. Huckabay, XXXX-XXXX (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, writ den. XXXX-XXXX (La.11/1/02), 828 So.2d 564.; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432. Such is not the case here. In addition, there is no merit to the defendant's argument that the officers used the possibility that the defendant was trespassing in the project as a pretext to stop him because there was no stop prior to his abandonment of the bag of drugs.