426 So.2d 1323 (1983)
STATE of Louisiana
v.
Ronnie W. JONES.
No. 81-KA-0699.
Supreme Court of Louisiana.
January 21, 1983.
Dissenting Opinion February 28, 1983.
*1324 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott Reeves, Art Lentini, Asst. Dist. Attys., for plaintiff-appellee.
Robert Garrity, Jr., Harahan, for defendant-appellant.
DIXON, Chief Justice.
On May 21, 1980 Ronnie W. Jones was charged by bill of information with the *1325 crime of simple burglary, a violation of R.S. 14:62; on October 31, 1980 a jury found him guilty of attempted simple burglary (R.S. 14:27). His motion for a new trial was denied, and he was sentenced to five years at hard labor. Defendant now appeals his conviction on one assignment of error and one argument.
At approximately 12:00 a.m. on May 21, 1980, Sarah Dillon was awakened by the sound of her daughter's bedroom door opening. Mrs. Dillon testified that she had fallen asleep next to her child while putting her to bed. Assuming that her husband was coming in to awaken her, she called out his name three times. No one answered and a person entered the bedroom. Mrs. Dillon then screamed for her husband who was asleep in front of the television in their bedroom next door. Getting no response she started banging on the wall, which finally roused him from his sleep. Mr. Dillon ran into the room, and apprehended the intruder, punching him several times. Mrs. Dillon then switched on the hall light and they recognized the prowler as their neighbor, the defendant, who lived two houses down the street.
In his assignment of error defendant contends that his conviction should be reversed because the state failed to produce sufficient evidence that his unauthorized entry into the dwelling of Mr. and Mrs. Dillon was with the intent to commit a felony or theft therein.
The state argues that defendant's unauthorized presence in the dwelling proved intent to commit a theft or felony in the victims' home. The defendant urges that his mere presence in the residence is not proof of his guilty intent.
R.S. 14:62 states in pertinent part:
"Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, ..."
The defendant must have had the specific intent to commit either a felony or a theft at the time of his unauthorized entry, both for the crimes of simple burglary and attempted simple burglary. State v. Marcello, 385 So.2d 244 (La.1980); State v. Anderson, 343 So.2d 135 (La.1977); State v. Walker, 328 So.2d 87 (La.1976).
In State v. Marcello, supra at 245, this court stated:
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired and prescribed criminal consequences to follow his act or his failure to act. LSA-R.S. 14:10. The State had to introduce at least some evidence that defendant had the active desire to commit a felony or theft in the ... building."
In determining whether evidence is sufficient to support a conviction, there must be sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Defendant testified that he was watching television at his home when suddenly something started to annoy him "universal wise." He elaborated that he became so tense and depressed that he decided to go to the hospital. He had previously been treated at the hospital for mental illness earlier in 1980 for about a week and a half. At that time he was admitted because he felt "kinda bad, kinda nauseated."
According to his testimony, his younger brother Stanley suggested that he "go ask McCharles [Dillon] he's got a car" to drive him to the hospital. Stanley worked for the Dillons on occasion and was acquainted with them.[1] Both cars of the Dillons were parked in the driveway, and the television was on. Defendant testified that he went "down to the Dillons to ask them ... would they bring me to the hospital and I rung *1326 the doorbell ... kept ringing the doorbell and I don't know I kinda got woozy or whatever. The next thing I know I'm standing in front [of] a cop's car and I was wondering what's going on ..."
The victims' testimony is not inconsistent with defendant's account and, in fact, supports a finding that defendant was sick and in need of medical attention. Mrs. Dillon testified that when she asked defendant, "What are you doing in my house?" he responded, "I don't know." She described defendant as looking "like he was drunk or something," "stooped over like and swaying," and "like a person in a drunk stupor with his arms swinging and like stuttering, like he really couldn't say anything." In addition, in the minute and a half that elapsed after Mrs. Dillon began screaming for her husband and before her husband appeared, defendant remained in the same position and "didn't do anything."
Mr. Dillon described his encounter with the defendant: "Well, when I hit him and he hollered and put his hand behind his back well I know how guys look when they drunk or on drugs and he act like he was on drugs to me." Defendant asked Mr. Dillon, "Man, is this real?" Later, defendant explained his presence in the house by saying that his brother Stanley suggested he ask the Dillons for a ride to the hospital.
The arresting officer testified that at the time of the arrest defendant's "eyes appeared to be glossy," but otherwise he appeared to be "coordinated" to the officer.
In the case of State v. Marcello, supra, this court reversed a conviction for attempted simple burglary when the testimony showed that the defendant, who had entered the NOPSI building at 921 Union Street, did not have the requisite intent to commit a felony or theft in the building. Defendant had been sleeping on the roof of the office building and had entered a restroom in the building to wash. In reversing the conviction, this court reasoned that:
"... No property was reported missing. Marcello took nothing from NOPSI except some soap and a paper towel. Compare State v. Anderson, supra, where Anderson was apprehended with stolen property. Marcello had no burglary tools. His flight does not necessarily show guilty intent to commit theft or a felony under these circumstances. Marcello may have run merely because he was not authorized to be on the NOPSI premises and had past convictions for `sleeping in public places' (Tr. 17). His activity in the building negates any implication that he intended the offense charged." 385 So.2d at 245. (Emphasis added).
In the present case defendant did not remove any property from the premises nor did he commit a felony within the Dillons' home. No property was reported missing.[2] Defendant had no burglary tools in his possession, nor was there any other evidence of an intent to burglarize his neighbors' home, other than his mere presence in the house.
"When the evidence does not support a conviction of the crime charged, the Court has generally remanded with instructions to discharge the defendant." State v. Byrd, 385 So.2d 248, 251 (La.1980). However, the discharge of the defendant is neither necessary nor proper if the evidence supports a conviction on a lesser and included offense. State v. Byrd, supra.
In this case, all of the elements of the crime of criminal trespass have been proved beyond a reasonable doubt to the trier of fact. A person who enters the residence of another without authorization is guilty of criminal trespass. R.S. 14:63.9 (repealed 1981).[3] See R.S. 14:63 for current version.
*1327 The evidentiary insufficiency related only to proof that defendant had "the intent to commit a felony or theft" in the building. The evidence more than sufficed to show that defendant intentionally entered the Dillons' residence without authorization. The Dillons were only casually acquainted with the defendant and had never previously invited him into their home. The victims testified that defendant must have entered their home through their back door, which inadvertently had been left unlocked. Defendant had to open a gate to the fenced-in backyard to reach the rear door of the house.
In State v. Byrd, supra, this court allowed entry of a judgment of guilty to a lesser and included offense which was a legislatively authorized responsive verdict to the greater offense found by the jury. Even though criminal trespass is not a responsive verdict to simple burglary (C.Cr.P. 814A(41)), it would be possible to extend the rationale of State v. Byrd, supra, to apply in this case because all of the elements of criminal trespass are included in the offense of simple burglary. However, the application of State v. Byrd ought not to be broadened, but ought to be limited to those responsive verdicts listed in C.Cr.P. 814.
The only legislatively authorized responsive verdicts for simple burglary are listed in C.Cr.P. 814A(41). These are "guilty," "guilty of attempted simple burglary," and "not guilty." Criminal trespass is not listed in C.Cr.P. 814A(41) as a responsive verdict.
State v. Byrd, supra, offers possibilities for preventing a miscarriage of justice when the state proves beyond a reasonable doubt that defendant is guilty of a lesser offense whose elements are included in the greater offense that defendant was charged with. Nevertheless, there are substantial risks in this departure from the traditional disposition of cases on appeal when the state fails to prove an essential element of the offense charged. See State v. Byrd, supra at 253 (Watson, J., dissenting); State v. Goods, 403 So.2d 1205, 1210 (Blanche, J., dissenting); Note, Appellate Review and the Lesser Included Offense Doctrine in Louisiana, 27 Loy.L.Rev. 284 (1981).
There are constitutional arguments against our extending the doctrine of State v. Byrd to embrace lesser and included offenses that are not listed in C.Cr.P. 814 as responsive verdicts. A defendant is entitled to be informed of the nature and cause of the accusations against him. La. Const. 1974, Art. 1, § 13. He must be afforded notice of the charges against him so that he is given a reasonable opportunity to prepare for trial and to defend himself accordingly.
Responsive verdicts were originally permitted because it was determined that a defendant charged with the commission of a given crime would be put on notice by that charge to defend against a lesser and included offense of the same genus. State in Interest of Batiste, 367 So.2d 784 (La. 1979). See, e.g., State v. Cole, 158 La. 799, 104 So. 720 (1925); Comment, The Responsive Verdict in Louisiana Criminal Procedure, 5 La.L.Rev. 603, 609 (1944).
The redactors of C.Cr.P. 814 did not believe that a charge of simple burglary would adequately alert the defendant that he would also be required to defend against a charge of criminal trespass. Apparently, the redactors concluded that criminal trespass was not closely enough associated with simple burglary, even though it actually was a lesser and included offense. In order for the crimes to be of the same generic class, each verdict must relate "to the same ultimate, unlawful purpose or design," that of entering a dwelling or other structure intending to commit a felony or theft therein. R.S. 14:62; Comment, The Responsive Verdict in Louisiana Criminal Procedure, 5 *1328 La.L.Rev. 603, 606 (1944). The crime of criminal trespass does not involve an intent to commit a felony or theft within the structure that was entered without authorization; trespass, furthermore, is not limited to entering structures.
Since criminal trespass is not a responsive verdict to simple burglary, the bill of information was insufficient to put defendant on notice that he would be required to defend against this charge. For offenses listed in C.Cr.P. 814, we will apply the doctrine of State v. Byrd only when the lesser included offense of which defendant might be found guilty by jury verdict is a statutory responsive verdict to the crime charged. By such a limitation of State v. Byrd, supra, we will not find defendant guilty of an offense which the jury was unable to consider as a responsive verdict to the crime charged.
For the reasons assigned, defendant's conviction of attempted simple burglary and the sentence are reversed and set aside and the defendant is ordered discharged.
LEMMON, J., dissents and will assign reasons.
LEMMON, Justice, dissenting.
When the issue regarding the sufficiency of evidence relates to intent (rather than identity, for example), the fact that the defendant took the stand and offered an exculpatory explanation for his actions raises a substantial inference that he had no other reasonable explanation. And when the jury reasonably rejects the exculpatory explanation offered by defendant as untrue, an appellate court reviewing the sufficiency of evidence may consider that rejection as a finding by the jury that defendant lied to conceal his guilt.
A criminal defendant cannot be compelled to speak. However, when he choses voluntarily to speak (or testify), the fact that he "lied" can be considered as evidence of a purpose to conceal his "true intent", because his revealing his true intent would be revealing his criminal intent. In other words, the jury may legitimately infer from a defendant's "false speaking" that he had a criminal intent, and an appellate court reviewing for sufficiency of evidence may consider the implicit jury finding (that he lied about his true intent) as evidence of his guilty intent.[1]
The circumstances of the present case raise a strong inference that defendant's midnight entry without authorization into his neighbor's residence was for the purpose of stealing many of the easily removable items of value commonly found in a home. While the fact that defendant was a neighbor known to the Dillons might weaken the inference of his criminal intent, that fact faded into obscurity when the jury reasonably rejected defendant's single unsupported and improbable explanation of his entry.[2]
Once the jury reasonably rejected defendant's explanation, there was no plausible explanation for defendant's unauthorized entry, other than for the purpose of committing a theft or felony. Because a rational juror could have rejected as untruthful the defendant's exculpatory explanation and could reasonably have concluded that defendant's criminal intent (to commit a theft or felony) was proved beyond a reasonable *1329 doubt, the conviction should be affirmed.
NOTES
[1] Mr. Dillon testified that Stanley came over to his house to "cut grass or go to the store for us or something like that." He also would "run errands and use Encyclopedias or stuff like that while he was going to school." However, Mr. Dillon noted that Stanley never entered the house without knocking.
[2] Two kitchen knives were reportedly out of place, being on the counter top by the stove instead of in the kitchen drawer. No fingerprints were taken from the knives.
[3] R.S. 14:63.9, as it appeared prior to repeal by 1981 La.Acts No. 78, § 3, provided in pertinent part:

"A. Criminal trespass in the Parish of Jefferson is:
(1) The unauthorized and intentional taking possession of any tract of land or structure thereon without the consent of the owner thereof; or
(2) The unauthorized and intentional entry upon any:
(a) Plot of immovable property in excess of one acre which is posted but not enclosed, unless said property is situated in an open range area; or
(b) Plot of immovable property which is posted and enclosed, including property situated in open range area; or
(c) Posted lands belonging to public institutions; or
(d) Structure, water craft or movable."
[1] The standard of appellate review, adopted in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is that the evidence is sufficient to support the conviction if the appellate court, viewing the evidence in the light most favorable to the prosecution, concludes that a rational juror could have found beyond a reasonable doubt that the defendant was guilty of every element of the crime. The Jackson standard does not require a reversal of this conviction, because when all of the evidence (including the rejected testimony of defendant) is viewed in the light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that defendant, at the time he attempted to enter the residence illegally, had the intent to commit a serious crime or theft therein.
[2] The jury reasonably rejected the implausible explanation suggested by the defendant, who failed to call his brother as a witness. Furthermore, the evidence also showed that defendant had $400 in his pocket and could have hired a taxicab.