949 So.2d 502 (2006)
STATE of Louisiana
v.
Rodney DOZIER.
No. 2006-KA-0621.
Court of Appeal of Louisiana, Fourth Circuit.
December 20, 2006.
Eddie J. Jordan, Jr., District Attorney of Orleans Parish, Graham L. Bosworth, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY).
*503 JAMES F. McKAY III, Judge.
STATEMENT OF CASE
On January 18, 2005, Rodney Dozier was charged with one count of simple possession of cocaine. At his arraignment on January 24, 2005, he pled not guilty. The court heard and denied his motion to suppress the evidence on February 18, 2005, and found probable cause to hold the defendant for trial. On March 29, 2005, the defendant went before a jury for trial. The defendant moved for a mistrial, which was granted. On April 11, 2005, the defendant went to trial before a jury and was found to be guilty as charged. The State subsequently filed a multiple bill. On May 24, 2005, the court found him to be a third offender and sentenced him as such to serve eight years at hard labor. On that same date the defense filed a motion for appeal and then filed a second motion on June 2, 2005. The court denied his pro se motion to reconsider sentence on July 14, 2005.
FACTS
N.O.P.D. Officer Gary Lacabe and his partner were on patrol in the First District on the evening of December 16, 2004. They were driving down St. Phillip Street, and as they approached the corner of St. Claude they saw the defendant Rodney Dozier standing with his back to the street, facing a brick wall surrounding Armstrong Park. The officers suspected Rodney Dozier was urinating on the wall, but as they flashed a spotlight on him, they saw him trying to light what appeared to be a glass crack pipe. The officers exited their car and asked Rodney Dozier to approach them. He did so, clutching objects in his hands. The officers ordered him to open his hands, but he refused to do so. Officer Lacabe then grabbed Rodney Dozier's right hand and tried to handcuff him behind his back. Rodney Dozier pulled his hand back and tried to flee. Officer Lacabe grabbed Rodney Dozier around the waist, and Rodney Dozier began flailing his arms widely trying to escape. Officer Lacabe hit Rodney Dozier in the back of his head, and the two men fell to the ground where they continued to struggle. Officer Lacabe testified that during this struggle Rodney Dozier threw the glass pipe to the ground, and the glass broke. Eventually Dozier stopped struggling when Officer Lacabe's partner hit him with a baton several times on the arms and legs. The officers handcuffed Rodney Dozier, placed him under arrest, and searched him incident to this arrest. They found a rock of what appeared to be crack cocaine hidden in a piece of brown paper inside his sock. They also retrieved the broken glass pipe and the lighter. The officers called for EMS personnel because Rodney Dozier was bleeding, and then took him to the hospital for treatment prior to being booked.
On cross-examination, Officer Lacabe testified that although it was after dark when they saw Rodney Dozier, there were streetlights in the area. He testified that he could see residue in the crack pipe, and at some point during the scuffle Rodney Dozier put his hand to his mouth as if to put something in his mouth.
The parties stipulated that the rock seized from Rodney Dozier's sock and the residue in the pipe tested positive for cocaine.
The defense introduced a photograph from Rodney Dozier's booking showing injuries to the right side of his face, as well as a bandage on his head.
DISCUSSION
A. Errors Patent
A review of the record reveals no patent errors.
*504 B. Assignment of Error
By his sole assignment of error, the appellant contends that the trial court erred by finding him to be a third offender and by not strictly complying with the requirements of La. R.S. 15:529.1. Although the State alleged in the multiple bill that the appellant was a fourth offender, the court found him to be a third offender.
The appellant raises several challenges to his multiple offender adjudication. First, he argues that he was entitled to a jury trial to consider whether he was a multiple offender. He next alleges the trial court and the State did not comply with the requirements of La. R.S. 15:529.1. He then maintains that the State failed to prove he voluntarily and knowingly pled guilty in his prior convictions and that the State failed to prove his release date for those offenses. Finally, he argues that these errors are of such constitutional magnitude that this court should recognize them as "plain error" requiring no contemporaneous objection.

I.
With respect to the first ground, the appellant contends that his multiple bill adjudication is invalid because it should have been considered by a jury. He cites Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), as support for this claim. However, in State v. Smith, XXXX-XXXX (La.App. 4 Cir. 7/20/05), 913 So.2d 836, this court stated:
The defendant also argues that he was entitled to a jury trial on the issue of his multiple offender status. He suggests that the multiple offender statute violates the Fourteenth and the Sixth Amendments to the U.S. Constitution because the statute allows a sentence to be increased beyond the statutory maximum without requiring the fact of the prior convictions to be submitted to the jury and proved beyond a reasonable doubt. The defendant relies upon the recent United States Supreme Court case of Shepard v. U.S., 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), in which the Court held that a sentencing court cannot look to police reports in making "generic burglary" decisions under the Armed Career Criminal Act. In its opinion, the Court noted that the issue raised
The concern underlying Jones and Apprendi: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of a state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to Jones and Apprendi, to say that Almendarez-Torres[ v. U.S., 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ] clearly authorizes a to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality, see Jones, supra, at 239, 119 S.Ct. 1215, therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as Taylor[ v. U.S., 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ] constrained judicial findings about the generic implication of a jury's verdict.
We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted *505 elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information. Shepard, 125 S.Ct. at 1262-1263.
The defendant contends that the Shepard, along with Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), require that there be a jury trial on the issues of identity, ten year lapse, whether the predicate offenses occurred before the present offense, and whether the predicate offense fit the enumerated aggravating convictions. In Apprendi, the U.S. Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435. This rule was recently reiterated by the U.S. Supreme Court in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and U.S. v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The United States Supreme Court clearly made an exception for prior convictions. Thus, under Apprendi the defendant's prior convictions were not required to be submitted to a jury. In addition, all the issues raised by the defendant concerning the predicate offenses can be determined by reviewing the documents submitted in support of the multiple bill of information. Defendant's argument is without merit.
State v. Smith, XXXX-XXXX at pp. 3-5, 913 So.2d 836, 839-840.
Here, the appellant makes the same argument rejected in Smith. For the reasons expressed in Smith, this claim has no merit.

II.
The appellant next argues that his multiple bill adjudication is deficient because of the State's and the trial court's failures to comply with the requirements of La. R.S. 15:529.1. He points out that he was arraigned on the same day as the hearing; thus, he was not given time to view the documents the State was going to use in support of the bill until the day of the actual hearing on the bill. However, as noted in State v. Williams, 2002-2189 (La.App. 4 Cir. 6/4/03), 849 So.2d 799, there is no requirement that the State submit its documentation to the defense prior to the multiple bill hearing. In addition, after pleading not guilty to the bill, the appellant did not object to the court immediately hearing the matter or ask for a continuance in order to allow him time to investigate the allegations.
The appellant next argues that because the documents were not produced until the day of the hearing, he did not have an opportunity to file written objections to the multiple bill as provided in La. R.S. 15:529.1. Nonetheless, the appellant could have orally objected to the sufficiency of the documents when counsel viewed them at the hearing and could have asked for a continuance of the hearing if counsel believed there were problems with this documentation. Counsel chose neither of these options. Indeed, as will be discussed in connection with the appellant's claims as to the sufficiency of the documents to support the adjudication, there was no basis for any objections to the documents. In addition, the court allowed the appellant and *506 counsel time to discuss the matter before finding him to be a third offender, and again the appellant did not object to the documents or ask for a continuance in the matter to allow him time to file written objections.
The appellant next points out that the court did not read the allegations in the bill to him in open court. He does not, however, cite any authority to show that this failure invalidated his adjudication.
The appellant also notes that his adjudication is invalid because the trial court failed to file written reasons supporting its decision to find the appellant to be a third offender. This claim also has no merit. Although La. R.S. 15:529.1 D(3) requires the court to issue written reasons, this court has found harmless error when the trial court fails to file written reasons if its oral reasons showed that it had concluded that the State's documentation was sufficient to establish the prior convictions. See State v. Sykes, XXXX-XXXX (La.App. 4 Cir. 3/9/05), 900 So.2d 156; State v. Prater, 99-0900 (La.App. 4 Cir. 4/26/00), 762 So.2d 82.
The appellant's claims as to the failure to comply with La. R.S. 15:529.1 have no merit.

III.
The appellant next directly attacks the sufficiency of the evidence the State produced to support his adjudication as a third offender. The multiple bill alleged that the appellant was a fourth offender, and it listed three prior convictions: (1) a 2000 plea to crime against nature; (2) a 1999 plea to simple possession of cocaine; and (3) a 1986 plea to purse snatching. The appellant argues that the State failed to prove identity as to the 1986 plea. The transcript indicates that although fingerprints were taken of the appellant on the day of the multiple bill hearing, there were no fingerprints attached to the documents from the 1986 guilty plea. However, the court found the appellant to be only a third offender, not a fourth offender. The court did not indicate which prior conviction it did not use to find the appellant to be a third offender. However, if there was evidence to prove identity and the voluntariness of the 1999 and 2000 guilty pleas, the 1986 plea did not have to be used to support the adjudication.
The appellant makes no argument concerning identity as to the 2000 and the 1999 pleas. He also concedes that the documents the State introduced in connection with the 1999 plea were sufficient to show that that plea was voluntarily and knowingly given. He argues, however, that the 2000 plea could not be used because the minute entry of the plea did not delineate the rights he was waiving by pleading guilty.
In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Court set forth the burdens of proof in multiple bill proceedings:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [footnote omitted] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, *507 and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin [v Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] rights.
The cases cited in the appellant's brief all predate Shelton, where the Court lessened the State's initial burden in multiple bill cases.
Here, with respect to the appellant's 2000 guilty plea, the State introduced the bill of information, which contained fingerprints on the back, the minute entry of the date of the plea, the docket master, and the plea of guilty waiver of rights form. The minute entry and the plea form both indicate that the defendant was present and represented by counsel when he pled guilty. Thus, the State met its initial burden under Shelton. Moreover, although the minute entry does not list the rights to which the trial court advised the appellant prior to taking his plea, the plea form fully delineates the rights that he was waiving by pleading guilty, including his Boykin rights. Thus, the State more than adequately proved that the appellant's 2000 guilty plea was voluntarily and knowingly given. This claim has no merit.
The appellant next argues that the State failed to present any evidence of the date of the prior offenses. However, included in the documents for all of the prior pleas were the bills of information for the prior convictions listing the dates of the offenses. The appellant then maintains that the State did not show the discharge dates for each of these prior convictions. However, the latest two prior convictions occurred less than ten years prior to the date of the offense in this case. Where less than the time limitation set forth in La. R.S. 15:529.1 elapsed between convictions, it is not necessary for the State to prove discharge dates. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977); State v. Chisolm, 99-1055 (La.App. 4 Cir. 9/27/00), 771 So.2d 205. As such, the State was under no obligation to provide the discharge dates to show that they fit within the ten-year period for use envisioned by La. R.S. 15:529.1 C.
There is no merit to the appellant's claim that the State failed to prove that he was a third felony offender.

IV.
By his final argument, the appellant appears to concede that no objections were made to any of these "errors." Indeed, the transcript of the multiple bill adjudication and sentencing shows that the defense raised none of these objections; nor did the appellant file a motion to quash the multiple bill, even though the bill was not filed until six weeks after the appellant's conviction. His motion for appeal does not allege any specific error as to the multiple bill or his adjudication. Although counsel notes that the appellant filed a pro se motion to reconsider sentence, his motion does not address the multiple bill adjudication. Ordinarily we would find that the above claims are not preserved. See State v. Wallace, XXXX-XXXX (La.App. 4 Cir. 11/26/03), 862 So.2d 286; State v. Washington, 98-0583 (La.App. 4 Cir. 11/17/99), 747 So.2d 1191. However, the appellant argues that these "errors" should nonetheless be recognized in the absence of any objection because they involve violations of *508 his constitutional rights. As noted in the discussions above, none of the "errors" alleged by the appellant rise to a constitutional level. This claim also has no merit.
None of the claims raised by the appellant invalidate his multiple offender adjudication. Accordingly, we affirm the appellant's conviction and sentence.
AFFIRMED.