956 So.2d 41 (2007)
STATE of Louisiana
v.
Gary WILSON.
No. 2006-KA-1421.
Court of Appeal of Louisiana, Fourth Circuit.
March 28, 2007.
*42 Eddie J. Jordan, Jr., District Attorney, Alyson R. Graugnard, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge EDWIN A. LOMBARD).
*43 MICHAEL E. KIRBY, Judge.
STATEMENT OF CASE
On November 19, 2004 the State charged Gary Wilson with three counts of simple burglary of an inhabited dwelling. He pled not guilty to all charges at his arraignment on November 23, 2004. On March 15, 2005 he elected to be tried by the court alone, and at the end of trial on that date the court found him not guilty as to two counts and guilty of unauthorized entry of an inhabited dwelling as to the third count. The court sentenced him on April 21 to serve six years at hard labor concurrently with the sentence in case # 454-055 wherein Wilson pled guilty to one count of stalking and received a one-year sentence at hard labor. The State filed a multiple bill, alleging he was a fourth felony offender. The court took evidence on the bill on June 21 and again on July 12, 2005, and at the conclusion of the latter hearing the court found Wilson to be a fourth offender. The court vacated his original sentence and sentenced him to serve twenty years at hard labor. The court also granted his motion for appeal on that date.
FACTS
Gary Wilson was charged with three counts of simple burglary of his ex-girl-friend's residence located at 2267 N. Prieur Street during a span of a little under two months. Ann Mack, Wilson's ex-girl-friend, testified that her relationship with Wilson ended on July 15, 2004.
As to the single count upon which Mr. Wilson was convicted Ms. Mack testified that sometime between 4:30 and 5:00 a.m. on September 21, she awakened to the sound of someone outside her bedroom window. Ms. Mack stated that her younger daughter Montriel was sleeping with her in the bed at the time. Ms. Mack stated that she saw a shadow outside the window and then heard Wilson screaming and hollering, telling her that he could get to her anytime he wanted, just as he had gotten the gun and the other things taken from her house. Ms. Mack stated that she awakened her daughter, and as the window broke from outside, she and her daughter fled the room. Ms. Mack testified that she ran to the kitchen and had to pry wood from the broken door before she could get out of the house. She testified that her son, who was also in the house, exited, and the two of them ran around the corner. She stated that she then noticed that her daughter was not with them, and they went back to get her. They found Montriel in the bathroom. Ms. Mack stated that her purse was recovered the next day and her keys after that.
Ms. Mack testified that she could clearly hear Wilson when he was outside her bedroom window, and she insisted that she saw him for a brief second as he broke through the window before she fled the room. She admitted, however, that there were no witnesses to the earlier break-ins that occurred on August 8 and August 28.
Montriel Sayles testified that she is Ms. Mack's daughter and that Wilson was her mother's boyfriend. Montriel testified that she was asleep with her mother when she heard someone "bamming" on the window and heard Wilson curse her mother and say that he wanted his money. She testified that Wilson then broke the glass, and she and her mother fled the room. She testified that she hid in the bathroom, and soon thereafter she saw, through a crack in the bathroom door, Wilson walking through the house toward the back door. Montriel testified that she did not see Wilson take anything from the house.
Off. Carolyn Dalton investigated the September 21 break-in. She stated that Ms. Mack indicated that her purse and wallet had been taken from the headboard *44 of her bed. Off. Dalton testified that these items were recovered about a block away from the residence. She stated that the crime lab dusted for fingerprints on both of these occasions, but she did not know if any prints were lifted or identified.
A. Errors Patent
A review of the record reveals there are no patent errors.
B. Assignments of Error

I.
By his first assignment of error, the appellant contends that there was insufficient evidence to support his conviction for unauthorized entry of an inhabited dwelling. Specifically, he argues that there was no evidence that he entered Ms. Mack's house or that he did not have authorization to enter the house.
In State v. Brown, 03-0897 (La.4/12/05), p. 22, 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
See also State v. Sykes, 04-1199 (La.App. 4 Cir. 3/9/05), 900 So.2d 156.
Here, although Wilson was charged with three counts of simple burglary of an inhabited dwelling, the court found him guilty of the responsive verdict to unauthorized entry of an inhabited dwelling on only the September 21 count. See La. C.Cr.P. art. 814(44.1). La. R.S. 14:62.3 prohibits "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." See State v. Nunnery, 04-1560 (La.App. 4 Cir. 12/8/04), 891 So.2d 67.
In Nunnery, the defendant, who had done work on the victim's house, was found inside the house when the victim was not at home. The victim testified that although she had known the defendant for many years and had allowed him to sleep in the house when he was repairing it, she made it clear to him that he could not be in the house when she was not there. This court affirmed his unauthorized entry conviction, finding that the evidence showed he entered the house without the victim's permission.
In State v. Coleman, 02-1000 (La.App. 4 Cir. 9/25/02), 828 So.2d 1130, the defendant and the victim had engaged in an on-again, off-again relationship wherein they lived together for a time. At the time of the offense, however, they were estranged, but the defendant still had some belongings in the residence. The defendant broke into the residence through a back window and raped the victim. The victim denied giving the defendant permission to enter the residence, while the defendant testified that the victim invited him inside, discussed their relationship with him for a few hours, and only became upset when their son came home. There was evidence that the defendant had been escorted from the residence on a prior occasion by the police, and that he was told that if he wanted to return to pick up any of his belongings, the police would accompany *45 him. On appeal, this court found that there was sufficient evidence of unauthorized entry to support his La. R.S. 14:62.3 conviction.
In State v. Cojoe, 00-1856 (La.App. 4 Cir. 3/21/01), 785 So.2d 898, the defendant and the victim had lived in the victim's house prior to their divorce and again for a time after the divorce. Some of the defendant's belongings were still in the house. However, a few weeks before the offense the victim threw the defendant out of the house and changed the locks to keep him from entering. The defendant entered the house while the victim was out of town. This court affirmed his unauthorized entry conviction, noting that although the defendant had permission in the past to enter the house, the evidence that the victim subsequently made him leave and that she changed the locks proved that the defendant had no permission to enter on the date of the offense.
In Cojoe, this court discussed several other cases involving the consent issue. In State v. Woods, 526 So.2d 443 (La.App. 4 Cir.1988), the defendant and the victim were still married, but she had moved into another apartment with another man, and the apartment was in her and the other man's names. This court rejected the defendant's argument that the victim could not withhold permission for him to enter the apartment because she was using community funds to rent it. This court found that the apartment was not a community dwelling which would have given him a proprietary interest in it. In State v. Monley, 557 So.2d 319 (La.App. 4 Cir. 1990), the defendant and the victim lived together before they married, but when the defendant moved out he gave his keys to the victim. The couple later married, but they did not live together after the marriage. Although the defendant was allowed to enter the residence to visit their children, the victim had told him not to visit late at night or early in the morning. One early morning he appeared, and when the victim would not let him inside, he broke in and raped the victim. On appeal, this court affirmed his aggravated burglary conviction (which required an unauthorized entry), finding that he did not have consent to enter the residence.
Likewise, in State v. Williams, 632 So.2d 351 (La.App. 1 Cir.1993), the residence in question was the victim's separate property which she had owned prior to her marriage to the defendant. They lived in the residence during marriage, but when they broke up the defendant moved out and returned his keys. The defendant repeatedly broke into the house, even after the victim had changed the locks on the door, and each time the victim called the police, but the defendant left before the police arrived. The last time, the defendant raped and sexually assaulted the victim, and police officers caught him as he left the residence. The appellate court rejected his argument that he was authorized to enter the residence because he had lived there in the past, and it affirmed his aggravated burglary conviction.
This court found an unauthorized entry of the defendant's grandmother's house in State v. Peterson, 623 So.2d 919 (La.App. 4 Cir.1993), where the defendant claimed that because he was a one-eighth owner in the house from his grandfather's succession, he was authorized to enter it. This court also rejected the defendant's argument that he had permission to enter because he had lived there until his grandmother asked him to move. In State v. Johnson, 29,269 (La.App. 2 Cir. 4/2/97), 691 So.2d 370, defendant's mother repeatedly told him he did not have permission to enter the house. He entered while she was away and contended that his nephew admitted him to the house. The *46 appellate court rejected his consent argument.
In State v. Spain, 99-1956 (La.App. 4 Cir. 3/15/00), 757 So.2d 879, the defendant and the victim engaged in an on-again, off-again relationship which produced a daughter. At the time of the offense, however, the couple had separated, and she and the daughter were living with another man. The defendant was allowed inside the victim's house when he visited their daughter. On the date of the offense, the defendant opened the kitchen door, hit the victim with a hammer, and damaged the new boyfriend's motorcycle that was parked in the kitchen. The victim fled, and the defendant ran into the living room, screaming and breaking an aquarium and a table before running out the front door. Although the victim admitted that she probably would not have called the police if the defendant had not been violent, she maintained that she did not give him permission to enter on that night. She insisted that her consent for him to enter was conditioned upon his good behavior, and she would not have let him inside given his behavior that night. This court found the defendant was not authorized to enter the residence. This court noted: "The relevant question is not whether defendant could generally enter the victim's residence, but whether this particular entry was authorized." Id., at p. 7, 757 So.2d at 884.
Here, the appellant argues: (1) there was no proof that he entered Ms. Mack's house; (2) there was no proof that Ms. Mack owned or rented the residence; and (3) there was no evidence that his entry was non-consensual. With respect to the first argument, the appellant first argues that Ms. Mack's testimony as to hearing him outside his window was suspect at best because each time someone broke into her house, she blamed him. He alludes to statements Ms. Mack allegedly made at trial concerning the recovery of her purse and keys after the break-in. However, there is no indication that Ms. Mack made most of these statements at trial. It is possible that she so testified at the earlier probable cause hearing, but that testimony was not made a part of the trial proceedings, and it cannot be considered in this appeal. The appellant also attempts to cast aspersions on her character, alleging that during the present offense she admitted she fled the house, leaving her children and grandchildren behind. This statement is incorrect in that Ms. Mack testified that she awakened her daughter before the appellant broke the window, got her out of the bed, and took her out of the bedroom. Ms. Mack also testified that she and her son fled the residence, and it was not until she was outside that she realized her daughter Montriel had not followed her and her son outside. At that point, they went back inside and found Montriel in the bathroom. In any event, even had Ms. Mack abandoned her children, this fact would not have negated the appellant's entry into the residence.
He also argues that because Ms. Mack had such animosity for him, her testimony is suspect and could not support the judge's verdict. However, the court, as factfinder, was able to view her demeanor and was able to assess her credibility. A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 00-1082, p. 33 (La.App. 4 Cir 2/6/02), 809 So.2d 1093, 1111; State v. Harris, 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435. The evidence presented at trial does not show that the court abused its discretion by believing Ms. Mack.
Appellate counsel appears to confuse Ms. Mack's son with her daughter. Counsel *47 identifies Montriel as Ms. Mack's son and argues at some length that while Ms. Mack originally testified that her daughter was in the bed with her when the appellant broke the window, she later substituted her "son" Montriel as the person who shared her bed that morning. However, Ms. Mack identified her daughter as Montriel, not her son. Thus, her testimony and that of her daughter is consistent.
In addition, Montriel testified that as she looked out the cracked bathroom door, she saw the appellant walking through the residence toward the kitchen door. Thus, Montriel's testimony directly places the appellant inside the residence. Therefore, the State proved the element of an entry.
The appellant's other two claims relate to whether he had the authority to enter the residence. He argues that there was no evidence adduced at trial to show that Ms. Mack either owned or rented the residence. It is true that the State did not present a title to the residence or a rental agreement, but Ms. Mack clearly testified that she and her children lived in the residence. He next argues that because her children lived in the residence with her, she was not the sole person who could have given him permission to enter, attempting to distinguish Nunnery. However, the situation here is similar to that in Nunnery in that in both cases the victim's children also lived in the residence.
The appellant's remaining claim is that because he lived in the residence before the three incidents involved in this case, he still had authority to enter. He alludes to the fact that he lived in the residence with Ms. Mack for eighteen months until they broke up and he moved out. Unfortunately, there was no testimony at trial about the appellant living in the residence at any time. The State's reply brief references such testimony at the probable cause hearing, but as noted above this testimony was not incorporated into the trial. Thus, there was no evidence adduced at trial to show that the appellant formerly lived in the residence with the victim; Ms. Mack merely testified that she and the appellant broke up on July 15, 2004, which was less than a month before the first incident with which the appellant was charged.
The facts adduced at trial show that the appellant and Ms. Mack were involved in a relationship until a few weeks before the first incident alleged in the bill of information. There was no testimony at trial that Ms. Mack told him that he did not have permission to enter the residence, but there was also no testimony that he lived there at the time of the offense, much less any testimony that he ever lived in the residence. His method of entry, breaking a window in a bedroom very early in the morning, tends to show that he did not have permission to enter the residence.
The appellant argues that even if the trier of fact believed Montriel's testimony concerning his entry, there was no showing of any intent to commit a felony or a theft once he entered the residence. See State v. Anderson, 343 So.2d 135 (La. 1976). However, even though the appellant was charged with simple burglary of an inhabited dwelling, which requires such intent, the court found him guilty of only unauthorized entry, which does not have an such requirement.
The remaining cases cited by the appellant are either not applicable or distinguishable. In State v. Lockhart, 438 So.2d 1089 (La.1983), an aggravated burglary case, the victim was the defendant's distant cousin, and she let him in her residence. In State v. Lozier, 375 So.2d 1333 (La.1979), the defendant posed as a policeman to gain entry into the victim's house. In State v. Dunn, 263 La. 58, 267 So.2d 193 (1972), the defendant was found *48 inside a public building during business hours. In State v. Marcello, 385 So.2d 244 (La.1980), where the defendant entered a public building after hours, the Court addressed the issue of the defendant's specific intent to commit a felony after he entered. The Court also discussed the specific intent to commit a felony or a theft in State v. Jones, 426 So.2d 1323 (La.1983).[1]State v. Cotton, 341 So.2d 362 (La.1976) addressed a double jeopardy issue, while State v. Searle, 339 So.2d 1194 (La.1976) involved the presumption that a person caught with recently stolen goods probably stole the goods.[2]
Here, the State established that the appellant entered the victim's home very early in the morning by breaking a window in a bedroom. Although Ms. Mack testified that she had ended her relationship with the appellant a few weeks before the first burglary, there was no testimony adduced at trial that the appellant ever lived in the residence. Given the circumstances of the case, as compared to those in the cases cited above, we find that there was sufficient evidence for the trial court to find that the appellant entered the victim's house without authority. This assignment of error has no merit.

II.
By his second assignment of error, the appellant raises several claims concerning his multiple offender adjudication. He attacks the procedure for filing the multiple bill and the procedure used to find him to be a quadruple offender. He then attacks the sufficiency of the evidence the State presented to prove the allegations in the bill.
With respect to the filing of the multiple bill, the appellant argues that because he was exposed to a life sentence as a fourth offender, the charge as a fourth offender should have been brought by indictment through a grand jury. However, this claim has been rejected by this court. In State v. Smith, 05-0375, p. 3 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 838, this court stated:
The defendant contends that under La. Const. Art. 1, Section 15 and La.C.Cr.P. article 382, the State should have sought a grand jury indictment on the issue of the multiple bill as he could have been sentenced to life imprisonment as a quadruple offender under the multiple bill. However, La. Const. Art. 1, Section 15 and La.C.Cr.P. article 382 applies only to substantive offenses, not to multiple bill proceedings. State v. Jolla, 337 So.2d 197 (La.1976); State v. Alexander, 325 So.2d 777 (La.1976); State v. Delandro, 2001-2514 (La.App. 2 Cir. 5/10/02), 818 So.2d 1011.
As per Smith and Alexander, cited in Smith, the State could bring these charges via a bill of information, even though he is exposed to a life sentence, because the allegations in the bill are not substantive charges but instead are merely prior convictions to be used to enhance his sentence. See also State v. Jackson, 05-1281 *49 (La.App. 4 Cir. 11/29/06), 947 So.2d 115. This claim has no merit.
The appellant also argues that his multiple bill adjudication is invalid because the court itself heard the matter and adjudicated him a multiple offender. He argues that he was entitled to a jury trial on the multiple bill. In support, he cites Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). However, this claim was also rejected in Smith, where this court stated:
The defendant also argues that he was entitled to a jury trial on the issue of his multiple offender status. He suggests that the multiple offender statute violates the Fourteenth and the Sixth Amendments to the U.S. Constitution because the statute allows a sentence to be increased beyond the statutory maximum without requiring the fact of the prior convictions to be submitted to the jury and proved beyond a reasonable doubt. The defendant relies upon the recent United States Supreme Court case of Shepard v. U.S., 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), in which the Court held that a sentencing court cannot look to police reports in making "generic burglary" decisions under the Armed Career Criminal Act. In its opinion, the Court noted that the issue raised
The concern underlying Jones and Apprendi: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of a state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to Jones and Apprendi, to say that Almendarez-Torres[ v. U.S., 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)] clearly authorizes a to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality, see Jones, supra, at 239, 119 S.Ct. 1215, therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as Taylor[ v. U.S., 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)] constrained judicial findings about the generic implication of a jury's verdict.
We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information. Shepard, 125 S.Ct. at 1262-1263.
The defendant contends that the Shepard, along with Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), require that there be a jury trial on the issues of identity, ten year lapse, whether the predicate offenses occurred before the present offense, and whether the predicate offense fit the enumerated aggravating convictions. In Apprendi, the U.S. Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and *50 proved beyond a reasonable doubt." Apprendi, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435. This rule was recently reiterated by the U.S. Supreme Court in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and U.S. v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The United States Supreme Court clearly made an exception for prior convictions. Thus, under Apprendi the defendant's prior convictions were not required to be submitted to a jury. In addition, all the issues raised by the defendant concerning the predicate offenses can be determined by reviewing the documents submitted in support of the multiple bill of information. Defendant's argument is without merit.
Smith, 05-0375 at pp. 3-5, 913 So.2d 836, 839-840. See also State v. Dozier, 06-0621 (La.App. 4 Cir. 12/20/06), 949 So.2d 502. This claim also has no merit.
The appellant next attacks the actual procedures used during the adjudication hearings. He argues that he was not given the documentation to support the multiple bill until the day of the hearings, and thus he was not afforded the opportunity to file formal objections to the documentation. It must be noted that the State initially filed a multiple bill alleging three prior convictions: case # 347-467I, wherein the appellant pled guilty to forgery in February, 1992; # 330-563H, wherein he pled guilty to possession of cocaine in December, 1988; and # 303-838C, wherein he pled guilty to being a felon in possession of a firearm in October, 1984. At the first multiple bill hearing, the State noted that it could not obtain the necessary documentation for the 1984 prior conviction, and it proceeded on the other two offenses. The State also noted, however, that the appellant had other prior convictions, and it asked for additional time to obtain the documentation on those cases. The court agreed. The State then presented the documentation for the two later cases, and the matter was continued without any finding by the court on the sufficiency of the evidence thus far introduced. When the matter was taken up approximately three weeks later, the State substituted a new multiple bill listing the two later cases and a third case, # 268-431C, wherein the defendant was found guilty as charged of illegal possession of stolen property in May, 1979. However, the defense did not file any objections to the documents presented at the earlier hearing with respect to the later two offenses. Thus, at least with respect to those two prior convictions, the defense had ample opportunity to file any objections, but it failed to do so.
In any event, this court rejected a similar claim in Dozier: "However, as noted in State v. Williams, 02-2189 (La.App. 4 Cir. 6/4/03), 849 So.2d 799, there is no requirement that the State submit its documentation to the defense prior to the multiple bill hearing. In addition, after pleading not guilty to the bill, the appellant did not object to the court immediately hearing the matter or ask for a continuance in order to allow him time to investigate the allegations." Dozier, at p. 6, 949 So.2d at 505.
The appellant also points out that the trial court failed to file written reasons to support its finding that the appellant is a fourth offender as required by La. R.S. 15:529.1 D(3). However, as noted in Dozier, written reasons are not required if the court presents oral reasons to show that it had considered the State's documents and found them to be sufficient to prove the prior convictions. See also State v. Sykes, 04-1199, pp. 9-10 (La.App. 4 Cir. 3/9/05), 900 So.2d 156, 163; State v. Prater, 99-0900, pp. 15-16 (La.App. 4 Cir. 4/26/00), *51 762 So.2d 82, 91-92. This claim also has no merit.
The appellant also argues that the State failed to prove the sufficiency of the proof of the multiple bill. First, he argues that the State failed to prove that the ten-year "cleansing period" of La. R.S. 15:529.1 had not elapsed between each of the prior convictions and the present conviction, thereby linking the offenses for multiple bill purposes. Initially, it must noted that it not clear that this claim has been preserved for appeal. The appellant did not file any written objections or in fact make any oral objection to the multiple bill on this basis. Indeed, with respect to the 1979 conviction, the defense conceded that a few months less than ten years elapsed between that conviction and the 1988 arrest for possession of cocaine. Without a written or an oral objection, the issue was not preserved. See State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14; State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72.
The appellant next attacks the proof of his identity as the perpetrators of the prior offenses. He argues that the proof was insufficient because the State linked the identity through comparisons of fingerprints on arrest registers, not the bills of information themselves. Again, however, there was no objection to the State's proof of identity, and the issue is not preserved for review. In addition, with respect to two of the prior convictions, the State's experts compared the fingerprints they took of the defendant on the day of the hearings to fingerprints found on the bill of information in the prior cases. In the other case, the State linked the information on the arrest register to the information contained in the certified packet from that case. Thus, even if the appellant had objected to the proof of identity, his claim would have no merit.
The appellant finally argues that the documentation as to the prior convictions is insufficient to support his quadruple offender adjudication because the State failed to show that the trial court in those three cases found that the pleas/convictions were constitutionally obtained. Again, the appellant failed to object on this basis, and the claim is not preserved. In addition, the State complied with the requirements set forth in State v. Shelton, 621 So.2d 769, 779-780 (La.1993), where the Court discussed the burdens of proof in multiple bill proceedings:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [footnote omitted] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden *52 of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] rights.
Here, the State introduced the bills of information, the waiver of rights guilty plea forms for the two guilty pleas, the docket masters, and various minute entries to prove the existence of the prior convictions. The State met its burden, and the defense did not present any evidence to rebut this proof. This claim has no merit.
Finally, the appellant admits that there was no objection to much of his claims, but he argues that this court should recognize these errors as "plain error." This court rejected an identical claim in Dozier:
By his final argument, the appellant appears to concede that no objections were made to any of these "errors." Indeed, the transcript of the multiple bill adjudication and sentencing shows that the defense raised none of these objections; nor did the appellant file a motion to quash the multiple bill, even though the bill was not filed until six weeks after the appellant's conviction. His motion for appeal does not allege any specific error as to the multiple bill or his adjudication. Although counsel notes that the appellant filed a pro se motion to reconsider sentence, his motion does not address the multiple bill adjudication. Ordinarily we would find that the above claims are not preserved. See State v. Wallace, XXXX-XXXX (La. App. 4 Cir. 11/26/03), 862 So.2d 286; State v. Washington, 98-0583 (La.App. 4 Cir. 11/17/99), 747 So.2d 1191. However, the appellant argues that these "errors" should nonetheless be recognized in the absence of any objection because they involve violations of his constitutional rights. As noted in the discussions above, none of the "errors" alleged by the appellant rise to a constitutional level. This claim also has no merit.
Dozier, at pp. 9-10, 949 So.2d at 507-08. As in Dozier, this claim has no merit.
In summation, none of the claims the appellant raises with respect to his multiple bill adjudication and the procedures used in the adjudication has merit.

III.
By his final assignment, the appellant contends that the trial court imposed an excessive sentence. The court sentenced the appellant to serve twenty years at hard labor as a fourth offender, the minimum sentence he could have received. See La. R.S. 14:62.3; La. R.S. 15:529.1.
However, this assignment is not preserved for appeal. At the conclusion of the original sentencing hearing on April 21, 2005, the defense did not object to the six-year sentence. At the conclusion of the July 12, 2005 multiple bill hearing, the court adjudicated the appellant a fourth offender and sentenced him to serve twenty years at hard labor. Again, the defense did not object to the sentence; although trial counsel argued that it was "mean spirited" to charge him as fourth offender so that he was exposed to twenty years to life, there was no objection once the court imposed the sentence. Instead, counsel merely noted the appellant's motion for appeal and asked that the Louisiana Appellate Project be appointed to represent the appellant for his appeal. In addition, there is no indication that the defense filed a motion to reconsider sentence in compliance with La.C.Cr.P. art. 881, which provides that a motion to reconsider sentence must be filed within thirty days of sentencing.[3] *53 This court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim about his sentence on appeal. State v. Rodriguez, 00-0519, p. 9 (La.App. 4 Cir. 2/14/01), 781 So.2d 640, 647; State v. Tyler, 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767. The failure to object or file a motion to reconsider sentence in this case precludes this court from considering this claim.
For the reasons above we affirm the appellant's conviction and his adjudication and twenty-year sentence as a fourth offender.
AFFIRMED.
NOTES
[1] The Court reversed the defendant's conviction and ordered him released because at the time of the offense, unauthorized entry was not a responsive verdict to attempted simple burglary. La.C.Cr.P. art. 814 was amended in 1982 (Acts 1982, No. 763) to add responsive verdicts to attempted simple burglary and again in 1985 to add responsive verdicts for simple burglary of an inhabited dwelling (Acts 1985, No. 799.
[2] The appellant also cites State v. Hollingsworth, 337 So.2d 461 (La.1976) and State v. Brady, 414 So.2d 364 (La.1982) merely for the applicable sufficiency of evidence standard.
[3] The thirty days in this case would have expired prior to Hurricane Katrina.